COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:   (650) 843-5000
Facsimile:   (650) 849-7400

RONAN A. NELSON (346553)
(rnelson@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:   (858) 550-6000
Facsimile:   (858) 550-6420
Facsimile:   +1 650 849 7400

Attorneys for Defendants
ENOCHIAN BIOSCIENCES INC.,
DR. MARK DYBUL, RENÉ SINDLEV,
and CARL SANDLER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CHOW, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENOCHIAN BIOSCIENCES INC., DR. MARK DYBUL, RENÉ SINDLEV, and CARL SANDLER,<br><br>Defendants. | Case No. 8:22-cv-01374-JWH-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:       June 28, 2024<br>Time:       9:00 A.M.<br>Courtroom: 9D, 9th Floor<br>Judge:      Hon. John W. Holcomb |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

## TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ...................................................................................6
II.  STATEMENT OF FACTS .....................................................................7
III. LEGAL STANDARD ..........................................................................18
IV.  PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER .......................19
     1.   Defendants had no actual knowledge of falsity. .....................20
     2.   Plaintiff fails to plead deliberate recklessness. ......................24
     3.   Plaintiff fails to plead personal motive. .................................28
     4.   The Complaint Does not show Defendants' involvement in the business was intimate. .........................................................28
     5.   Holistic Analysis ...................................................................30
V.   PLAINTIFF'S 20(A) CLAIM SHOULD BE DISMISSED .............................30
VI.  CONCLUSION ..................................................................................30

TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
   855 F.Supp.2d 1043 (C.D. Cal. 2012) ................................................................. 20

*In re Apple Inc. Sec. Litig.*,
   2020 WL 2857397 (N.D. Cal. June 2, 2020) ....................................................... 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 14

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) .................................................................................... 6

*Bao v. Solarcity Corp.*,
   2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ........................................................... 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 14

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ............................................................................... 19

*Browning v. Amyris, Inc.*,
   2014 WL 1285175 (N.D. Cal. Mar. 24, 2014) .................................................... 23

*Buttonwood Tree Value Partners, LP v. Sweeney*,
   910 F.Supp.2d 1199 (C.D. Cal. 2012) ................................................................ 19

*Cheng v. Activision Blizzard, Inc.*,
   2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) ............................................... 13, 20

*Cheung v. Keyuan Petrochemicals, Inc.*,
   2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) ...................................................... 24

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
   2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) .................................................... 16

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys.*
   *v. Align Tech., Inc.*,
   65 F. Supp. 3d 840 (N.D. Cal. 2014), aff'd, 856 F.3d 605 (9th Cir.
   2017) ..................................................................................................24

*Curry v. Yelp Inc.*,
   875 F.3d 1219 (9th Cir. 2017) ............................................................13

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ............................................................13

*Dias v. Spartan Micro, Inc.*,
   2023 WL 2629870 (C.D. Cal. Mar. 3, 2023) ......................................25

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ..............................................................21

*Enochian Biosciences, Inc. v. Gumrukcu*,
   Case No. 22STCV34071 (Cal. Super. Ct., LA Cnty. Oct. 21, 2022)...........13, 26

*In re Enovix Corp. Sec. Litig.*,
   2024 WL 349269 (N.D. Cal. Jan. 30, 2024)........................................16

*Glazer Cap. Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ..............................................................24

*Greenberg v. Cooper Companies, Inc.*,
   2013 WL 2403648 (N.D. Cal. May 31, 2013) ....................................16

*Hershewe v. Joyy Inc.*,
   2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) ......................................24

*In re Hienergy Techs., Inc. Sec. Litig.*,
   2005 WL 3071250 (C.D. Cal. Oct. 25, 2005) .....................................17

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
   998 F.3d 397 (9th Cir. 2021) ..............................................................14

*Loftus v. Primero Mining Corp.*,
   230 F.Supp.3d 1209 (C.D. Cal. 2017)................................................15

*In re Maxwell Techs., Inc., Sec. Litig.*,
   18 F.Supp.3d 1023 (S.D. Cal. 2014) ..................................................24

**MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE**

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ....................................................................14, 15

*Mueller v. San Diego Ent. Partners, LLC*,
260 F.Supp.3d 1283 (S.D. Cal. 2017) ..............................................................20

*In re Nektar Therapeutics*,
2020 WL 3962004 (N.D. Cal. July 13, 2020) ...................................................17

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ............................................................................14

*In re Peregrine Sys., Inc. Sec. Litig.*,
2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) ...................................................19

*Petrie v. Elec. Game Card, Inc.*,
2011 WL 13130015 (C.D. Cal. Oct. 19, 2011) ..................................................20

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial
Bank*,
694 F.Supp.2d 287 (S.D.N.Y. 2010) .................................................................17

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
2011 WL 3501733 (N.D. Cal. Aug. 10, 2011) ..................................................20

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) ..........................................................................24

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ............................................................................25

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) .............................................................................23

*Ruble v. Rural/Metro Corp.*,
2001 WL 1772319 (D. Ariz. Jan. 26, 2001).....................................................21

*S. Ferry LP, #2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ........................................................................2, 14

*In re Solarcity Corp. Sec. Litig.*,
274 F.Supp.3d 972 (N.D. Cal. 2017).................................................................16

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

*Sollberger v. Wachovia Sec., LLC*,
2010 WL 11595839 (C.D. Cal. Feb. 22, 2010) ....................................................25

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..............................................................................14

*Stanley v. Schmidt*,
369 F.Supp.3d 297 (D. Mass. 2019)....................................................................22

*Sylebra Cap. Partners Master Fund Ltd. v. Everbridge, Inc.*,
2023 WL 3549506 (C.D. Cal. May 9, 2023)........................................................14

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)......................................................................................14, 15

*Wallack v. Idexx Lab'ys, Inc.*,
2013 WL 5206190 (S.D. Cal. Sep. 12, 2013)......................................................15

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) ...........................................................................2, 14

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
29 F.4th 611 (9th Cir. 2022) ...............................................................................16

*In re Wet Seal, Inc. Sec. Litig.*,
518 F.Supp.2d 1148 (C.D. Cal. 2007) .................................................................17

*Wietschner v. Monterey Pasta Co.*,
294 F.Supp.2d 1102 (N.D. Cal. 2003)..................................................................23

*Zucco Partners, LLC v. Digimac Corp*,
552 F.3d 981 (9th Cir. 2009) .........................................................................15, 25

**Statutes**

15 U.S.C.
§78u-4 .........................................................................................................14, 15
§78u-j(b) ......................................................................................................13, 14

**Other Authorities**

Fed. R. Civ. P.
9(b)..............................................................................................................1, 14

**MEMORANDUM ISO MOTION TO DISMISS AMENDED COMPLAINT**
**8:22-CV-01374-JWH-JDE**

## I.  INTRODUCTION

Plaintiff's complaint against Enochian (now Renovaro) fails to state a claim and should be dismissed.  Lacking particularized facts showing what information Enochian knew and when, Plaintiff relies on speculation, hindsight, and unwarranted assumptions.  None of this comes close to stating a securities fraud claim under the "formidable" and heightened pleading standards of Rule 9(b) and the PSLRA.

In 2018, Enochian, a biotech company, bought rights to develop and commercialize a novel gene therapy approach for HIV and cancer conceptualized by Serhat Gumrukcu – a key third party in this case.  Gumrukcu presented himself as an experienced doctor from Turkey who had researched gene therapies and medical treatments for over a decade.  Independent valuation firms, researchers, and medical experts, valued Gumrukcu's intellectual property at over $100 million.  After his ideas were sold to Enochian, Gumrukcu launched his own non-profit institute to continue his gene therapy research.  He received widespread praise from key opinion leaders, doctors, and researchers at top universities, and impressed the broader medical and scientific research community.  But in a disturbing and shocking turn of events, the United States Department of Justice arrested Gumrukcu in May 2022 for conspiracy to commit murder.  Over the following month, Hindenburg Research and the Wall Street Journal unearthed more startling news about Gumrukcu: he allegedly did not have a medical degree, was convicted of crimes in Turkey, and was a professional con artist.  Following these reports, Enochian sued Gumrukcu for fraud in Los Angeles Superior Court in September 2022.

In this case, Plaintiff seeks to improperly impute Gumrukcu's fraud to Enochian to recover from stock drops following news about Gumrukcu.  His core theory is that Enochian falsely called Gumrukcu a "Dr." between January 17, 2018 and June 27, 2022, while knowing or being deliberately reckless in not knowing, that Gumrukcu had no medical degree.  But Plaintiff fails to adequately plead that any Defendant acted with an intent to defraud investors (i.e., scienter).  To do so, he must

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

allege specific facts creating a strong inference of "intentional or conscious misconduct" that is at least as compelling as opposing inferences. *S. Ferry LP, #2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008). This standard is "not easy to satisfy." *Webb v. Solarcity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018). Critically, there are no facts showing that any Defendant knew or believed Gumrukcu was not a doctor during the class period.

Plaintiff attempts to save his claims by alleging Defendants were "deliberately reckless" because a "cursory investigation" would have supposedly revealed Gumrukcu was not a doctor. (¶ 9[1].) Plaintiff is wrong. He does not explain how a "cursory investigation" would have exposed Gumrukcu, who had concealed secrets from the world for decades. Ironically, Plaintiff's own allegations make clear that it took private investigators months if not years of rigorous travel and full-time investigation to report on Gumrukcu. The only reasonable inference is that Enochian believed Gumrukcu was a doctor and was delivering on his promise to help develop Enochian's research pipelines, and when it heard otherwise, sued him for fraud. This falls short of the PSLRA's strict pleading standards.

For these reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

## II.    STATEMENT OF FACTS[2]

***Parties.*** Enochian Biosciences Inc. ("Enochian" or the "Company") is an early-stage biotechnology company based in Los Angeles. (¶¶ 3, 18.) Founded in 2018, Enochian, now Renovaro, develops gene therapies that enhance the body's immune response to treat fatal diseases such as cancer. (¶¶ 3, 18.)

---

[1] "¶" and "Compl." refer to the Plaintiff's Amended Complaint for Violations of the Federal Securities Laws; and "Ex." refer to the exhibits to the accompanying Declaration of Ronan A. Nelson. Unless otherwise noted, emphasis is added and citations, quotation marks, and alterations are omitted.

[2] For purposes of this Motion to Dismiss, the facts as recited herein are taken from the allegations of the Complaint, documents incorporated by reference, and documents for which the court can properly take judicial notice. Defendants do not concede that the allegations in the Complaint are in fact true.

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

Dr. Mark Dybul has been Enochian's Chief Executive Officer ("CEO") since July 2021.  (¶ 19.)  He served as the Executive Vice-Chair of the Board of Directors (the "Board") since January 2019.  (Ex. 23 at 348.)  Prior to joining Enochian, Dr. Dybul served as the former head of the US President's Emergency Plan for AIDS Relief (an ambassador role), and as the executive director of the Global Fund to Fight AIDS, Tuberculosis and Malaria.  (*Id.*)  He was a professor at Georgetown University and previously a research fellow under Dr. Anthony Fauci.  (*Id.*)  His first supervisor at NIH was Dr. Drew Weissman, recently awarded the Noble Prize for his work discovering mRNA and a COVID vaccine.[3]

René Sindlev is Chairman of Enochian's Board.  (¶ 21.)  As an investor and entrepreneur, Sindlev has owned and developed more than 28 companies in the jewelry (e.g., Pandora), aviation charter, real estate, and biosciences industries.  (Ex. 23 at 348.)  He was a controlling shareholder in DanDrit Biotech, Inc. before it merged with Enochian.  (¶ 30; Ex. 23 at 348.)

Carl Sandler is a healthcare investor and technology entrepreneur who served as a member of Enochian's Board of Directors from February 2018 until March 2022.  (¶ 20.)

***Sindlev meets Gumrukcu in 2016***.  Sindlev was a controlling investor in DanDrit, a biotech company pursuing a therapeutic cancer vaccine.  (¶¶ 30–31.) In 2016, Sindlev met a man named Serhat Gumrukcu.  (¶ 29.)  Gumrukcu portrayed himself as a doctor who studied at Dokuz Eylul University School of Medicine, in Turkey and First Moscow State Medical University.  (*See* Ex. 13 at 185.)  Prior to meeting Sindlev, Gumrukcu studied medicine and co-authored publications as part of the Dokuz Eylul Department of Emergency Medicine.  (*See* Ex. 1 at 14, 19, 23.) Convinced by Gumrukcu's knowledge and credentials, Sindlev "went under [Gumrukcu's] knife for treatment of a potentially cancerous growth."  (¶ 29.)  Sindlev

---

[3]https://www.sec.gov/Archives/edgar/data/1527728/000173112223002227/e5264_defa14a.htm

also hired Gumrukcu to assess the viability of DanDrit's cancer vaccine. (¶ 30.)

***Gumrukcu's gene therapy approach.*** Gumrukcu sought to improve DanDrit's vaccine through employing gene therapy concepts he was developing to treat HIV. (*See* Ex. 4 at 70.) Gumrukcu was also exploring different approaches for treating HIV through stem cell transplants. (*Id.* at 72.) His approach built on previous studies that cured patients through stem cell transplants from donors resistant to HIV. (*See* Ex. 7 at 134.) Unfortunately, donor transplants have a low success rate, require concurrent chemotherapy, and cause severe side effects. (*Id.*) Gumrukcu believed these issues could be addressed by using the patient's own cells as opposed to donor cells. (*See* Ex. 4 at 74.) Genetically modifying a cell's resistance to HIV could potentially cure patients, without the risks inherent in other transplants. (*See id.*)

Intrigued by Gumrukcu's ideas, Sindlev (through DanDrit), funded a $500,000 pre-clinical study program conducted by Gumrukcu's company, Enochian Biopharma, Inc. ("Legacy Enochian").[4] (¶ 33.) According to Sindlev, he "invested because of Serhat's brilliant ideas about cell, gene, and immunotherapy. I would characterize my investment as hyper-exciting with the potential to use cutting-edge science to save and transform many lives." (¶¶ 64, 99.)

Recognizing the value in Gumrukcu's research and ideas, DanDrit executed a non-binding letter of intent to acquire Legacy Enochian in July 2017. (¶ 33; Ex. 2 at 53.) Over the next six months, DanDrit conducted extensive due diligence on the value of Legacy Enochian's intellectual property. (Ex. 3 at 64.) With the assistance of independent appraisers, and consistent with accounting standards, DanDrit estimated that the fair value of the perpetual, sublicensable, and exclusive license to Enochian's intellectual property was $127 million. (¶ 34; Ex. 2 at 41.) The valuation was based on an "internal evaluation of the viability of the technology, an evaluation

---

[4] Gumrukcu was the co-founder of Enochian Biopharma, which was owned and controlled by Weird Science, LLC ("Weird Science"). (¶¶ 25, 32.)

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

by intellectual property counsel on the intellectual property rights associated with such technology, and an independent valuation on the technology." (Ex. 3 at 64.)

In February 2018, DanDrit acquired Legacy Enochian in exchange for 18,081,962 shares, or 50% of DanDrit's common stock, certain acquisition expenses, and forgiveness of the $500,000 loan DanDrit provided Enochian for the pre-clinical studies. (¶ 33; Ex. 2 at 36.) DanDrit also adopted the Enochian name. (¶ 3.) Through the merger, DanDrit (subsequently Enochian) obtained an exclusive license to develop and commercialize HIV/AIDs treatments based on Gumrukcu's research and studies ("HIV License Agreement"). (Ex. 2 at 36.) Post-merger, Gumrukcu was not an employee, officer, or director of Enochian. (Ex. 18 at 208.)

Gumrukcu continued his gene therapy research through one of his companies called G Tech. (*See* Ex. 4 at 103; ¶ 26.) Gumrukcu also founded a non-profit medical institute, Seraph Research Institute ("Seraph"),[5] where he worked alongside Dr. Phillip Musikanth, an HIV and internal medicine doctor, and partnered with the Scripps Research Institute. (¶ 28; Ex. 15 at 196; Ex. 8 at 140.) Seraph's website included a biography on Gumrukcu, portraying him as a credentialed and well-respected doctor who was actively involved in the medical community:

> Dr. Gumrukcu completed his medical training at Dokuz Eylul University in 2004 in Izmir, Turkey, and went on to receive his medical degree (M.D.) at I.M. Sechenov Moscow Medical Academy/First Moscow State Medical University. He then completed two years of residency in Genetics at the same institution, receiving the Russian equivalent of a Ph.D. (formally recognized as such by the Turkish health and education ministries) for his residency training in the specialty of genetics. While continuing his medical research, he received a separate Ph.D. in Psychology (unrelated to his former medical practice overseas) from Ankara University in Turkey in 2010. Well-respected for his innovative approach, Dr. Gumrukcu regularly collaborates with some of the world's most influential research institutions and medical doctors. (Ex. 13 at 185.)

***Short sellers write about Enochian.*** In 2019, short sellers wrote a handful of articles about Enochian. A short seller is an investor who borrows shares of stock

---

[5] At incorporation, Seraph was called "G Health Research Foundation." (¶ 28.)

that the investor believes will decrease in value and then sells them on the open market, with the plan to repurchase the shares later for less money.[6]  Because short sellers make money from stock drops, they are incentivized to write negative articles in an effort to drive down the stock price.[7]  Enochian was no different.  In 2019, a short seller named White Diamond Research wrote a series of blog posts about Enochian.  (¶ 59.)  "The blog posts commented on Gumrukcu's criminal background, including [a] no contest plea to commercial burglary.  The post also noted White Diamond was unable to affirmatively confirm Gumrukcu had any advanced degree, licensing, or publications."  (*Id.*)

MedWatch, a small Danish publication, reported that Enochian had "reviewed documentation proving Gumrukcu's educational background as part of the due diligence process."  (¶ 64.)  It also noted Gumrukcu was fined in connection with a 2017 burglary charge.  (¶ 64; Ex. 18 at 208.)  MedWatch claimed that Sindlev understood the burglary charge involved wiring a bad check, unrelated to Gumrukcu's research or relationship with Enochian.  (*Id.*)  Prosecutors later dismissed the case in 2020.  (Ex. 18 at 208.)

***Gumrukcu's research impresses the medical community.***  Gumrukcu began applying his gene therapy approach to other conditions such as solid tumors[8] and hepatitis B, (*see* Ex. 12 at 167), and began filing a number of patent applications with the United States Patent and Trademark Office ("USPTO").  (Ex. 25 at 385–86.)  In 2019, Gumrukcu jointly submitted with Enochian a patent for a cancer immunotherapy method that the USPTO later granted.  (Ex. 20 at 222.)  His findings excited Enochian's Scientific Advisory Boards, the team of medical experts who guided Enochian's research and development programs.  (Ex. 5 at 111.)  The Scientific Advisory Boards engaged nine prominent doctors and PhDs who taught

---

[6] *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 96 n.1 (2d Cir. 2007).
[7]   https://realtrading.com/trading-blog/day-trading-short-seller-reports/#what-is-a-short-seller-report.
[8] Gumrukcu was able to build on DanDrit's research to redevelop its therapeutic cancer vaccine.  (Ex. 3 at 65.)

medicine at Georgetown, UCSF, University of Alabama, Lyon University, the London School of Hygiene and Tropical Medicine, Johns Hopkins University, and other prestigious institutions. (*See* Ex. 5 at 111; Ex. 6 at 127; Ex. 11 at 163–64, Ex. 23 at 348–49.)  These members also led clinical development at Gilead, chaired American medical associations, and even held leadership positions with the United Nations. (Ex. 23 at 348–49; Ex. 11 at 163; Ex. 5 at 111.)  The Scientific Advisory Boards reviewed the research from Gumrukcu and were impressed with what they saw. (*See* Ex. 11 at 163–64.)

Gumrukcu similarly convinced the broader medical community about the promise of his research and treatments.  So much so that independent doctors began collaborating with Gumrukcu.  For example, in 2018, Gumrukcu and Dr. Philippe Gallay, PhD, a leading researcher in immunology and hepatitis at the Scripps Research Institute, worked together to develop hepatitis B treatments. (Ex. 6 at 127; Ex. 7 at 134.)  Using gene therapy, they developed a mechanism that would later be coined "hijack RNA" that tricks hepatitis B proteins into killing hepatitis B cells but not uninfected cells. (Ex. 12 at 168–69.)  Dr. Gallay and Gumrukcu presented their initial findings at an international conference called HEP DART 2019, where researchers share advancements in viral hepatitis and liver cancer. (Ex. 7 at 134.)  HEP DART participants selected Gumrukcu's "hijack RNA" approach as one of the best new therapies/novel strategies. (Ex. 12 at 169.)  Following Gumrukcu and Dr. Gallay's HEP DART presentation, Enochian paid Gumrukcu to license and commercialize his prospective hepatitis treatment. (Ex. 7 at 134.)

Like Dr. Gallay, Dr. Carol Brosgart, a leader in the viral hepatitis and liver cancer field, took notice of Gumrukcu.  She joined Enochian's Board of Directors in 2019 and later chaired Enochian's Hepatitis B Scientific Advisory Board. (Ex. 22 at 289; Ex. 23 at 349.)  The medical and scientific community continued to accept Gumrukcu's research to present at prestigious medical conferences.  Between 2018 and 2022, Gumrukcu presented at the American Society of Gene & Cell Therapy

("ASGCT") 2020, the World Vaccine & Immunotherapy Congress 2021[9], International Liver Conference 2021, and Conference on Retroviruses and Opportunistic Infections ("CROI") 2021.  (Ex. 11 at 163.)  Gumrukcu's influence in the industry continued to grow through early 2022 when he was invited to give the concluding Plenary Lecture at the Innate Killer Summit in San Diego, CA.  (Ex. 14 at 191.)  The Summit brings together researchers, clinicians, and industry leaders pursuing NK or "natural killer" cell therapies.[10, 11]  Dr. Ana Jewett, a renowned gene therapy investigator at UCLA who helped chair the Summit, explained that "Dr. Gumrukçu was invited and made the concluding speaker because of his pioneering work on novel clinical approaches, including with innate killer cells."  (*Id.*)

Numerous other doctors, medical experts, and journalists praised Gumrukcu for his research:

- Dr. Peter Piot, Professor of Global Health, London School of Hygiene and Tropical Medicine, former founding Director of UNAIDS and co-discoverer of the Ebola virus: "I have been working on pandemics for over 40 years and was blown away by the brilliant creativity of the inventor, Dr. Serhat Gumrukçu, and the sophistication and elegance of the scientific approach to potentially treat and prevent any variants of SARS-CoV-2 and Influenza. If the impressive results in animal models are confirmed in people, there is the potential to contribute significantly to fighting COVID-19." (Ex. 11 at 163.)

- Dr. Anna Suk-Fong Lok, MD, Alice Lohrman Andrews Research Professor in Hepatology in the Department of Internal Medicine, at Michigan Medicine in Ann Arbor, Michigan: "I was intrigued by Enochian"s Inventor and Co-Founder, Dr. Serhat Gumrukçu's presentation at an

[9] Gumrukcu also capitalized on the uncertainty and anxiety surrounding the COVID-19 pandemic by presenting research that suggested the same underlying theory in gene therapy could be used to treat or prevent Covid-19.  (Ex. 9 at 142.)  Because this theory had already demonstrated potential with HBV, Enochian (and others in the industry) believed there was potential.  Gumrukcu began presenting this new theory at medical conferences and received positive feedback.  Based on these data points, Enochian paid Gumrukcu to license and commercialize the treatment on April 18, 2021.  (*Id.*)
[10] NK or "natural killer" cells are white blood cells in the immune system that can kill harmful cells without having had previous exposure to them. (https://my.clevelandclinic.org/health/body/24898-natural-killer-cells.)
[11] https://innate-killer.com/about/about-event/

MEMORANDUM ISO MOTION TO DISMISS AMENDED COMPLAINT 8:22-CV-01374-JWH-JDE

important scientific meeting in December 2019, where he cited the early data and very innovative strategy to potentially cure HBV." (*Id.*)

*Authority Magazine*: "Dr. Serhat Gumrukcu is well respected within the medical scientific community for his cutting-edge research in cancer and infectious diseases including HIV, Hepatitis B, and influenza. He is the Executive Director and Director of Translational Research at the Seraph Research Institute (SRI) based in Los Angeles, California. He is also a member of the American Society of Clinical Oncology (ASCO), International AIDS Society (IAS), HIV Medicine Association (HIVMA), and American Society of Gene & Cell Therapy (ASGCT) where he serves on the Cancer Cell & Gene Therapy Committee and Infectious Diseases and Vaccines Committee." (Ex. 10 at 147–48.)

***Enochian meets with FDA regarding drug development.***   In June 2020, Enochian met with the FDA to discuss a potential Investigational New Drug ("IND") application to begin clinical trials of its gene-modified transplant treatment for HIV, Gumrukcu's initial idea and the impetus for the DanDrit acquisition. (Ex. 12 at 168.) The following year Enochian and the FDA completed the Pre-IND request process for its hepatitis B "hijack RNA" platform, a process by which the FDA meets with drug developers to provide feedback and improve the efficiency of the development and approval process. (*Id.* at 169.)  And in February 2022, the company shared that Gumrukcu submitted a pre-IND request for a therapeutic vaccine for HIV, for which Enochian possessed the exclusive licenses to use the underlying treatment. (*Id.* at 168.)   Gumrukcu's early ideas were showing concrete promise in three developmental platforms for Enochian: preventative and therapeutic vaccines for cancer and HIV, improving engraftment in HIV-resistant cell transplants, and inducing hepatitis B and influenza cell death through the "hijack RNA" mechanism. (*See id.* at 168–69.)

Amidst the development of Enochian's research pipelines, Enochian spoke openly about the man whose gene therapy ideas had inspired multiple platforms of

research and top academic collaborations to cure cancers, HIV, hepatitis B, and influenza.  In doing so, Enochian referenced Gumrukcu on its website, promotional videos, interviews, and in its SEC filings.  (¶¶ 90–97, 100.)  When referring to Gumrukcu, Enochian called him "Dr." and "PhD," the titles Enochian and the rest of the medical community had been led to believe were his.  (¶¶ 90–97, 100.)  When posting Gumrukcu's biography on the Enochian website, speaking with journalists, or describing the promise of Gumrukcu's research, Enochian used the credentials that they and everyone else understood to be true.  (¶¶ 90–97, 100.)  While Enochian understood Gumrukcu had wired a bad check and did not deny that he was eccentric, after years of research they had no reason to suspect that he did not have the qualifications he claimed.  (*See* ¶¶ 64, 97.)

***The Department of Justice abruptly arrests Gumrukcu for conspiracy to commit murder.***  On May 25, 2022, the United States Department of Justice arrested Gumrukcu for conspiracy to commit murder, unlawful seizure and detention, and wire fraud.  (¶ 47.)  According to the indictment, in 2018, Gumrukcu and his co-defendants conspired to hire a hitman to murder Gregory Davis, who threatened to expose Gumrukcu to the FBI after Gumrukcu gave Davis false bank documentation in an oil brokerage deal. (Ex. 19 at 216.)  After the news of the arrest, the Enochian Board issued a press release expressing its disbelief following Gumrukcu's "unexpected and shocking" arrest. (¶ 70; Ex. 16 at 201.)  The Board assured investors that the arrest was "completely unrelated to the Company" and reiterated the fact that Gumrukcu "has had no formal role in the Company." (*Id.*)  Enochian immediately terminated Gumrukcu's scientific advisory role.  (Ex. 18 at 208.)  The same day, Enochian's stock price dropped from $5.87 to $3.70. (¶ 69.)

***Short sellers and investigative journalists report more shocking news about Gumrukcu.***  The week after Gumrukcu's arrest, Hindenburg Research published a short seller report about his past, purportedly based on months of investigation and thousands of sources.  (¶ 11.)  First, Hindenburg wrote that although Gumrukcu

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

attended medical school, he dropped out, and forged his medical credentials. Hindenburg was able to purchase a medical diploma on the Russian black market that was similar to the one Gumrukcu used to allegedly forge his records, which they had to smuggle out through a neighboring country. (*See* ¶ 72.) Second, Hindenburg said that it discovered criminal charges against Gumrukcu in Turkey – the full records of which Hindenburg only obtained by gaining permission from one of Gumrukcu's alleged victims. According to Hindenburg, those records indicated that Gumrukcu allegedly posed as a medical doctor and treated a cancer patient with mistletoe and "stem cell therapy." They discovered, after "trawling backstreet magic shops and second-hand bookstores in the bazaars in Istanbul and his hometown, Izmir," that Gumrukcu had been a performing magician in the early 2000s.[12] (*See* ¶ 72.) Hindenburg reached its conclusions only through hiring private investigators in Russia and conducting on-the-ground searches in Turkey. The Hindenburg report also claimed that Robert Wolfe, the former CFO of Enochian, had alleged that he was fired when he asked "critical questions" about Gumrukcu. Wolfe later admitted under oath that he never raised the issue of prior criminal charges against Gumrukcu with anyone at Enochian and that he looked into Gumrukcu "once I was terminated and once the lawsuits began," acknowledging that he "didn't find nearly what's in the press today." (Ex. 21 at 244, 246.) Ultimately, Hindenburg characterized Gumrukcu as an "international con artist" who had "fool[ed] many along the way."

On June 27, 2022, *the Wall Street Journal* published an article, noting that Eric Leire, Enochian's former CEO, thought that Gumrukcu "was a liar" and possibly "taking liberty with science," but went on to say that "I thought the guy would not hurt a fly." (¶ 12; Ex. 19 at 217.) The article described Gumrukcu as a "Biotech Wizard," and walked through his history of magic and fraudulent real estate deals while lauding his ability to garner interest from Dr. Anthony Fauci and the National Institute of Diabetes and Digestive and Kidney Diseases. (Ex. 19 at 210, 215, 217.)

---

[12] https://hindenburgresearch.com/enochian/

The article also highlighted the gruesome murder-for-hire allegations related to Gumrukcu's fraudulent oil deal with Gregory Davis. (*Id.* at 214, 216, 218–19.)

***Enochian sues Gumrukcu for fraud.*** The new revelations about Gumrukcu stunned Enochian as much as they did the rest of the world. Dr. Dybul, Enochian's CEO, explained in a letter to investors that the "shocking arrest was entirely unknown to any members" of management or the board until the day Gumrukcu was arrested. (Ex. 18 at 208.) And although Gumrukcu's past disturbed Dr. Dybul, he reminded investors that "Enochian's rigorous foundation is rooted in independently conducted science, and [its] commitment to the promise of [its] potential therapies remains strong." (*Id.*) Dr. Dybul acknowledged the severity of Gumrukcu's concealed past, but pointed out that Hindenburg "conflate[d] [Gumrukcu's] past with [Enochian's] future as a company." (*Id.*) He closed the letter by noting that: "The science is the science, and the data are the data. The Company is led by a strong Management team." (*Id.*) Prominent scientific leaders who were also defrauded by Gumrukcu reiterated their support for Enochian and its science:

- Dr. Philippe Gallay: "I was attracted to Enochian by some of the most innovative scientific ideas I had seen in my more than 35 years as a Researcher. I have performed independent, pivotal laboratory and animal studies on the HIV, Hepatitis B and SARS-CoV-2 pipelines of Enochian BioSciences and have seen the very promising data for myself. Indeed, I have been an author on abstracts reviewed, accepted and presented at several important scientific conferences. I am enthusiastic about further collaborations with the Company." (Ex. 17 at 205.)

- Dr. Anahid Jewett: "My laboratory has conducted key studies demonstrating that Enochian BioSciences' approach to solid tumors, starting with pancreatic cancer, induces a remarkably strong and broad immune response that could translate into potential life-saving therapy for many people. I look forward to beginning animal studies soon and to further work with Enochian." (*Id.*)

In October 2022, Enochian sued Gumrukcu for fraud in California Superior Court. (¶ 89.) Enochian alleged, based on a scientific review conducted after Gumrukcu's past was revealed to the world, that Gumrukcu had falsified certain data

regarding the "hijack RNA" research in 2019 to fraudulently induce Enochian into paying for the hepatitis B license, and later the COVID/influenza license. (*Id.* at 284.) In an amended Complaint the Company also sued him for misrepresenting his medical credentials. (Ex. 22 at 284-285.) The suit survived a demurrer, an answer was filed, and the matter is currently in discovery. (*Enochian Biosciences, Inc. v. Gumrukcu*, Case No. 22STCV34071 (Cal. Super. Ct., LA Cnty. Oct. 21, 2022).) Today, Enochian continues its research into gene therapy. In its partnership with UCLA, Enochian has expanded the pre-clinical validation of its cancer vaccine and the first in-human studies are projected to begin at the end of 2024. (Ex. 24 at 361.)

**This lawsuit.** On July 26, 2022, after the Company sued Gumrukcu for fraud, Plaintiff filed this lawsuit against Enochian, Dr. Dybul, Sindlev, and Sandler. (ECF No. 1.) The Complaint's core allegation is that Enochian praised Gumrukcu and called him a doctor from January 17, 2018 to June 27, 2022, while knowing that he was not a doctor. (¶ 1.) However, Plaintiff fails to plead sufficient facts showing that any defendant knew or was deliberately reckless in not knowing that Gumrukcu was not a medical doctor. Instead, the allegations and the facts subject to judicial notice, show Enochian was defrauded by Gumrukcu – a skilled and professional con artist – just as many others in the scientific community were.

## III.  LEGAL STANDARD

Section 10(b) requires "a material misrepresentation or omission of fact, scienter, a connection with the purchase or sale of a security, transaction and loss causation, and economic loss." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017). To plead scienter, plaintiff is required to "state with particularity facts giving rise to a ***strong*** inference that the defendant acted with" an "intent to deceive, manipulate, or defraud." *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *10 (C.D. Cal. Apr. 18, 2022); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). Securities fraud claims "inescapably carry a degree of moral turpitude," and thus require "***a greater degree of pre-discovery investigation by the plaintiff***" and

"*particular allegations*" to protect defendants from unfounded allegations. *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 403-04 (9th Cir. 2021). To that end, Plaintiff must clear three hurdles to survive a motion to dismiss.

*First*, he must allege facts that state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007). The Court need not accept conclusory statements, unwarranted deductions, unreasonable inferences, or allegations that contradict matters subject to judicial notice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

*Second*, Plaintiff must satisfy Rule 9(b) by pleading the "who, what, when, where, and how" of the alleged fraud, and "set forth what is false or misleading about a statement, and why it is false." *Sylebra Cap. Partners Master Fund Ltd. v. Everbridge, Inc.*, 2023 WL 3549506, at *5 (C.D. Cal. May 9, 2023). This "particularity" requirement applies to all elements of a Section 10(b) claim. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

*Third*, Plaintiff must satisfy the PSLRA's "formidable pleading requirements," *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054–55 (9th Cir. 2008), providing highly detailed facts "giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. §78u-4(b)(2)(A); *S. Ferry LP*, 542 F.3d at 784.

## IV.   PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER[13]

The Complaint should be dismissed because Plaintiff fails to adequately plead Defendants made any alleged false or misleading statement with scienter. Pleading scienter in a securities fraud case is no small feat. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007); *Webb v. Solarcity*, 884 F.3d at 855 (the pleading standards for scienter are not "easy to satisfy."). The PSLRA imposes exacting standards, requiring Plaintiff to state "with particularity" facts giving rise to a "*strong*

---

[13] While Defendants are moving to dismiss for failure to adequately plead scienter, Defendants disagree that any of the statements were false or misleading at the time made.

*inference*" that each individual defendant acted with the intent to deceive, manipulate, or defraud.  15 U.S.C. §78u-4; *Loftus v. Primero Mining Corp.*, 230 F.Supp.3d 1209, 1234 (C.D. Cal. 2017) (plaintiffs must "allege scienter with respect to *each* of the individual defendants").  Conclusory allegations about Defendants' state of mind are inadequate.  Instead, "the complaint *must* contain allegations of *specific contemporaneous* statements or conditions that demonstrate the *intentional or the deliberately reckless* false or misleading nature of the statements when made." *Metzler*, 540 F.3d at 1066.  Deliberate recklessness is an exacting standard, requiring "not merely simple, or even inexcusable negligence, but an *extreme departure* from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is *so obvious* that the actor must have been aware of it." *Zucco Partners, LLC v. Digimac Corp*, 552 F.3d 981, 990-91 (9th Cir. 2009).  Allegations must be "[p]ersuasive, effective, and cogent," giving rise to an inference of scienter that is "at least as compelling as any opposing inference." *Tellabs, Inc.*, 551 U.S. at 323-24.  The Court may conclude that scienter is adequately alleged only if the inference of scienter is at least as cogent and compelling as any nonculpable inferences.  *Id*.

Plaintiff claims that Defendants (1) knew their statements were false or misleading, (2) were in the alternative deliberately reckless in not knowing, (3) were personally motivated to commit fraud, (4) were involved with Enochian's business, and (5) possessed "corporate scienter."  (¶¶ 106–18.)  None are sufficient.

### 1.   Defendants had no actual knowledge of falsity.

Plaintiff's core allegation is that Enochian praised Gumrukcu and called him a doctor, while knowing he had no medical degree.  (¶ 1.)  Therefore, to plead actual knowledge, Plaintiff must plead particularized facts showing Enochian *knew* Gumrukcu was not a doctor at the time each challenged statement was made. *Wallack v. Idexx Lab'ys, Inc.*, 2013 WL 5206190, at *6 (S.D. Cal. Sep. 12, 2013) (Plaintiff must "provide, in great detail, all the relevant facts forming the basis for"

Defendants' actual knowledge).  Remarkably, there is not a single well-pled factual allegation to support this proposition.  Instead, Plaintiff's entire theory *assumes* Enochian knew Gumrukcu had no medical degree by the beginning of the class period, *i.e.*, June 17, 2018.  Yet, there are no allegations regarding what information, documentation, diligence, background checks, or knowledge Defendants had about Gumrukcu or when such information was communicated to them.  In short, there are no factual allegations about what each defendant knew and when they knew it.  *In re Enovix Corp. Sec. Litig.*, 2024 WL 349269, at *15 (N.D. Cal. Jan. 30, 2024) ("the scienter allegations suffer from the basic underlying problem that the complaint fails to connect the dots to show that any defendant said one thing while knowing (or being deliberately reckless about not knowing) that the reality at that time differed in a material way.").  Without at least some of these foundational details, Plaintiff cannot credibly argue, let alone plead with particularity, that Defendants knew Gumrukcu was not a doctor before the challenged statements were made.  "It is simply not enough to assume or implausibly infer that the defendants must have known about these issues," or to ask the court to make "inferential leaps."  *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 621 (9th Cir. 2022); *see also Greenberg v. Cooper Companies, Inc.*, 2013 WL 2403648, at *10 (N.D. Cal. May 31, 2013) (declining to assume company knew about issues based on later news article).  But that is all Plaintiff does here, which is insufficient.

*First*, Plaintiff's suggestion that Enochian knew Gumrukcu was not a doctor because of a November 2019 blog post is deficient on its face.  (¶ 59.)  There, the short seller purportedly noted it "was unable to affirmatively confirm Gumrukcu had any advanced degree, licensing, or publications."  (*Id*.)  But Plaintiff fails to establish that each Defendant even read this blog post, much less how they interpreted it.[14]  *In*

---

[14] Moreover, speculation by third-party articles is insufficient to plead a strong inference of scienter.  *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *28 (S.D.N.Y. Sept. 29, 2014) (Wall Street Journal speculation about why Chinese official was arrested insufficient to establish a strong inference of

*re Solarcity Corp. Sec. Litig.*, 274 F.Supp.3d 972, 1013 (N.D. Cal. 2017) (rejecting scienter allegations where no facts showed defendants reviewed internal reports that allegedly supported claims). Nor does Plaintiff explain how any defendant would ***know*** Gumrukcu was not a doctor from reading this blog post. The short seller did not claim Gumrukcu was not a doctor – only that they did not affirmatively confirm his degree or license. *In re Nektar Therapeutics*, 2020 WL 3962004, at *10 (N.D. Cal. July 13, 2020) ("far from describing any expertise in oncology or methodologies for conducting clinical trials, [the short seller] self-identified as having something to gain from a decrease in Nektar's stock price."); *see Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank*, 694 F.Supp.2d 287, 300 (S.D.N.Y. 2010) (public companies are "not obligated to respond to every potentially disparaging news story or to rebut the musings of the financial press"). In contrast, and around the same time, other articles claimed that Enochian made clear that it had "reviewed documentation proving Gumrukcu's educational background as part of the due diligence process," which it believed confirmed he was a doctor. (¶ 64.) The only reasonable inference is that Defendants truly believed Gumrukcu was a doctor.

***Second***, the Complaint's tortured allegations that Leire (Enochian's former CEO) and Wolfe (Enochian's former CFO) were terminated in 2019 for raising concerns about Gumrukcu also miss the mark. (¶¶ 57–58.) Glaringly, Plaintiff does not allege that either individual knew or believed Gumrukcu was not a doctor, much less that they communicated any such beliefs to any individual defendant. As a result, "Plaintiff[] ha[s] provided no factual basis from which the Court can presume that Defendant[s] had any knowledge of [Gumrukcu lacking a medical degree], much less does the [] Complaint detail when or in what context Defendant[s] learned of [their] cohorts' checkered pasts." *In re Hienergy Techs., Inc. Sec. Litig.*, 2005 WL 3071250, at *5–6 (C.D. Cal. Oct. 25, 2005).

scienter); *In re Wet Seal, Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1172 (C.D. Cal. 2007) ("[c]onclusory allegations [ ] are no more sufficient if they come from a newspaper article than from plaintiff's counsel . . . .").

***Third***, Plaintiff speculates that Enochian knew Gumrukcu had developed "valueless" and "sham" science. (¶ 111.) But there are no facts to support this theory. Nor does Plaintiff even explain what "valueless" or "sham" science even means, let alone how they reached such a conclusion. The only conceivable support is Leire, who purportedly told the Wall Street Journal that he thought Gumrukcu was a "liar" who "maybe" "took liberty with science."[15] (Ex. 19 at 217.) But there are no facts showing what Leire meant by "liar" or "liberties with science."[16] In short, Plaintiff alleges no facts showing that Enochian believed the intellectual property it bought from Gumrukcu was inaccurate, manipulated, or otherwise a "sham." To the contrary, data received by the Company and praised in the scientific community continued to demonstrate the potential scientific value of the IP (*e.g.*, Ex. 7 at 134) and a third-party valuation firm conducted extensive due diligence and valued the IP, which the Company is still pursuing today in collaboration with UCLA and other prestigious figures in the medical community. (Ex. 3 at 64; Ex. 24 at 361.)

***Finally***, Plaintiff alleges that Enochian knew Gumrukcu was a "serial fraudster," (¶ 6), who "had an extensive history of prior fraudulent activity and criminal convictions," (¶ 111.) However, he fails to allege particularized facts showing what information Defendants knew about Gumrukcu's legal history and when they knew it. Instead, he claims Wolfe told unknown persons at Enochian that Gumrukcu was a "convicted felon." (¶ 58.) Plaintiff fails to provide any detail about what Wolfe meant by "convicted felon," nor what he purportedly said to Enochian. Not surprisingly, Plaintiff selectively omits that Wolfe testified during a deposition

---

[15] Months after the putative class period, Enochian conducted a review of all the underlying science and found that Gumrukcu had manipulated certain data that was presented to the Board in connection with HBV, COVID, and influenza tests in order to induce Enochian to make certain payments under different licenses. (*See* Ex. 22 at 284.) Once the Company learned of this, it swiftly sued Gumrukcu for fraud. The manipulated data had nothing to do with the initial HIV License that Enochian obtained as a result of the merger, and there are zero allegations that anyone at Enochian knew about Gumrukcu's manipulation during the putative class period.

[16] Moreover, Leire signed the Company's SEC filings attesting to what management considered to be the fair value of the acquisition (*e.g.*, Exs. 2–4), which undercuts any potential inference that could be drawn from these hearsay WSJ statements.

MEMORANDUM ISO MOTION TO DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

that the only thing he knew about Gumrukcu's past in 2019 was "the rumor that he had a bounced check." (Ex. 21 at 243.)  Wolfe also testified that he knew nothing else about Gumrukcu's criminal background, and that he never raised issues about Gumrukcu to anyone at Enochian. (*Id.*)

***At most***, Sindlev was aware that Gumrukcu pled no contest to a burglary charge that had been publicly reported by news articles since 2019. (¶¶ 59, 64.)  But knowledge of a publicly disclosed fact cannot form the basis of a securities fraud claim. *In re Peregrine Sys., Inc. Sec. Litig.*, 2005 WL 8158825, at *41 (S.D. Cal. Mar. 30, 2005) ("allegations that a Defendant was generally aware of facts . . . by itself, is not sufficient to show scienter").  Regardless, knowledge of Gumrukcu's purported legal issues is insufficient to plead that Enochian made the challenged statements with scienter.  Statements praising Gumrukcu's research and calling him "Dr." are not rendered false, inaccurate, or misleading by Gumrukcu's no contest plea to a burglary charge.[17] *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (no duty to disclose if statement does not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists").  Much less does Plaintiff plead facts showing that any defendant believed they were misleading investors by not broadcasting Gumrukcu's past convictions – which were entirely unrelated to his ideas and intellectual property.

### 2.    Plaintiff fails to plead deliberate recklessness.

Tacitly acknowledging his failure to plead actual knowledge, Plaintiff pleads in the alternative that Enochian was deliberately reckless when making the challenged statements. (¶ 117.)  "The key to pleading intentional or reckless conduct

---

[17] Plaintiff also claims that Gumrukcu's compensation structure is proof Defendants knew Gumrukcu was convicted of a crime. (¶ 109.)  Again, mere knowledge that Gumrukcu pleaded no contest to an unrelated burglary charge does not render any statement misleading or support a strong inference of fraudulent intent.  Moreover, there are no facts as to why Gumrukcu was paid this way (or if he was ever actually paid), just speculation. *See Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F.Supp.2d 1199, 1207–08 (C.D. Cal. 2012) ("It is simply 'not enough for [p]laintiffs to state facts giving rise to a mere speculative inference of deliberate recklessness, or even a reasonable inference of deliberate recklessness.'").

is pleading facts that show that when defendants made the allegedly false statements, they knew they were false, or **knew facts 'so obvious that they must have been aware' that they were misleading the public.**" *Cheng*, 2022 WL 2101919, at *11; *Petrie v. Elec. Game Card, Inc.,* 2011 WL 13130015, at *4 (C.D. Cal. Oct. 19, 2011). Deliberate recklessness is a high bar, requiring "an **extreme departure** from the standards of ordinary care . . . **so obvious** that the actor must have been aware of it." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2011 WL 3501733, at *7 (N.D. Cal. Aug. 10, 2011). "[S]imple, or even inexcusable negligence" is not sufficient to establish a strong inference of deliberate recklessness, *id.*, and conclusory statements that merely allege "Defendants acted knowingly or severely reckless . . . do not constitute particular facts to support" scienter under the PSLRA. *Mueller v. San Diego Ent. Partners, LLC*, 260 F.Supp.3d 1283, 1293 (S.D. Cal. 2017). Plaintiff must "state specific facts indicating no less than a degree of recklessness that strongly suggests **actual intent**." *In re Am. Apparel, Inc. S'holder Litig.*, 855 F.Supp.2d 1043, 1075-76 (C.D. Cal. 2012). Plaintiff again claims that Enochian was deliberately reckless in not knowing (1) Gumrukcu was not a doctor, (2) Gumrukcu's science was a "sham," and (3) he was a "serial" fraudster.

*First*, Plaintiff fails to plead facts showing Enochian was "deliberately reckless" (*i.e.* that it was "so obvious") Gumrukcu was allegedly not a doctor. (¶ 117.) He does not dispute that Gumrukcu attended some medical school, published medical journals for over a decade, and went to great lengths to convince the world he was a doctor. Nor do they allege what information Enochian knew about Gumrukcu and when they knew it, as discussed above. *See, supra* at 15-19. Instead, Plaintiff claims that Enochian ignored the 2019 short seller post that was "unable" to affirmatively confirm Gumrukcu's foreign-earned degree.[18] (*See* ¶¶ 59-60.) But as discussed above, this post does not conclude Gumrukcu was not a doctor. Nor does

---

[18] Nor does Plaintiff explain how Leire's purported belief that Gumrukcu was a "liar" had anything to do with Enochian's beliefs that Gumrukcu was a doctor.

Plaintiff allege what the Company did or did not do with respect to any type of diligence or investigation performed on Gumrukcu..

Perhaps most importantly, Plaintiff does not dispute that Gumrukcu's work and his repeated interactions with various medical experts, conference organizers, medical associations, prominent doctors, the nine members on Enochian scientific advisory boards, and other members of the larger medical and scientific research community were all consistent with his having the reported credentials. (*See, e.g.*, Ex. 7 at 134 (Dr. Philippe Gallay, PhD, states Gumrukcu's work is "[t]he mechanism of action conceived by [a] brilliant scientist.").) For example, Gumrukcu's science and research convinced renowned doctors and researchers from John Hopkins, the London School of Hygiene and Tropical Medicine, Georgetown University, the Scripps Research Institute, and UCLA to advise and collaborate with Enochian. (Ex. 11 at 3–4; Ex. 6 at 127; Ex. 5 at 111.) His findings also prompted invitations for Gumrukcu to speak at ASGCT and give the plenary lecture at the Innate Killer Summit. (Ex. 11 at 163; Ex. 14.) These sophisticated individuals, all with advanced degrees themselves, at the very least establish the ordinary standard of care. Plaintiff fails to explain how Enochian's conduct was "an extreme departure from ordinary care" when it was convinced Gumrukcu was a doctor – just like the rest of the medical community. *DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (plaintiffs are required to prove that the allegedly fraudulent actions "were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts."); *Ruble v. Rural/Metro Corp.*, 2001 WL 1772319, at *10 (D. Ariz. Jan. 26, 2001) ("the problem is the absence of pleading facts that show how the defendants were on notice" of their alleged wrongdoing).

Ultimately, Plaintiff's recklessness allegations are premised on the assumption that a "cursory investigation" would have revealed that Gumrukcu was not a doctor.

26

(¶ 9.) Of course, he pleads no facts showing what a "cursory" investigation means, nor how it would have uncovered that Gumrukcu had no medical degree. Instead, he appears to claim that because Enochian did not discover Gumrukcu was not a doctor that they were per se deliberately reckless. Not so. *See Stanley v. Schmidt*, 369 F.Supp.3d 297, 312–13 (D. Mass. 2019) ("[w]hile [defendant's] failure to investigate further may require further analysis from a negligence perspective, it was not such an extreme departure from the ordinary standard of care as to raise an inference of scienter here"). According to Plaintiff's own allegations, it took months if not years of private investigation from Hindenburg and the Wall Street Journal travelling and working full time to uncover the purported truth. There are no facts alleged suggesting that any information that would have outed Gumrukcu was readily ascertainable or should have been uncovered absent an extreme departure from ordinary care. Just because Enochian did not discover what private investigators learned does not mean that it acted with deliberate recklessness.

**Second**, Plaintiff suggests that Defendants were deliberately reckless in not knowing that Gumrukcu's science was a "sham." But as discussed above, Plaintiff alleges no facts showing that Defendants had any reason to believe or suspect that the science was a "sham." Nor does Plaintiff allege particularized facts showing what diligence, verification, and independent research Enochian performed (or did not perform) on Gumrukcu's scientific findings.

**Third**, the Complaint insinuates that Defendants were deliberately reckless in not discovering that Gumrukcu had a criminal record in Turkey. However, deliberate recklessness is premised on whether a defendant has "reasonable grounds to believe material facts existed . . . but nonetheless failed to obtain and disclose such facts [if] he could have done so **without extraordinary effort**." *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *20 (N.D. Cal. June 2, 2020). Plaintiff is expecting the Company to have uncovered facts that took investigative journalists, short sellers, and the FBI years to piece together. That is beyond extraordinary effort. And the

Company's lack of an investigative journalism team does not equate to them being deliberately reckless.  Indeed, far from a "cursory" investigation, the Hindenburg Report involved interviews of with current and former employees, review of foreign court documents, communications with foreign medical facilities and universities, and other "first-hand evidence." (¶ 11.)  Hindenburg even went so far as to obtain "a full copy of [a] case file after being granted legal permission by one of [Gumrukcu's] alleged victims."  Such a duty is not imposed on companies.

### 3.   Plaintiff fails to plead personal motive.

Plaintiff claims that Dr. Dybul and Sandler "benefited directly from insider sales of Weird science" – an entity affiliated with Gumrukcu. (¶ 116.)  Plaintiff is wrong.  Weird Science did not sell any stock, it merely distributed shares to certain entities – similar to options vesting.  (Ex. 26 at 388.) Importantly, there are no allegations that a any Defendant sold a single share of Enochian stock, which cuts against any inference of scienter.  *Rombach v. Chang*, 355 F.3d 164, 177 (2d Cir. 2004) (rejecting motive-and-opportunity allegations).  Indeed, it makes no sense that Dr. Dybul and Sandler acquired many shares, but decided not to sell them knowing bad news was coming that would lead to a stock drop.

Simply put, the alleged personal motive undermines any inference of scienter.

### 4.   The Complaint Does not show Defendants' involvement in the business was intimate.

Plaintiff claims Defendants acted with scienter because they were "intimately involved in promoting Gumrukcu and his purported intellectual property, which was the sole basis for Enochian's value." (Compl. at 36.)  But allegations that a defendant was "intimately involved" with a certain aspect of the business are not sufficient to plead scienter.  *Browning v. Amyris, Inc.*, 2014 WL 1285175, at *15 (N.D. Cal. Mar. 24, 2014) (no scienter despite allegations that defendant was intimately involved with signature product that the "entire company hinged on [it]."); *Wietschner v. Monterey Pasta Co.*, 294 F.Supp.2d 1102, 1115 (N.D. Cal. 2003) (no specific facts showing

"what information these individuals, or anyone else at the company, actually acquired through 'inside access'"). Specifically, Plaintiff fails to identify what particular information Defendants acquired by being "intimately involved" in Enochian's business and drug development efforts.

Moreover, while the Complaint alleges Defendants were informed of unspecified concerns related to Gumrukcu by Leire and Wolfe, (¶¶ 57-58), it fails to "detail when or in what context" each Defendant learned of Gumrukcu's checkered past. These types of allegations are not sufficient to plead a strong inference of scienter. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1109 (9th Cir. 2021) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter — at least absent some additional allegation of specific information conveyed to management **and related to the fraud**."); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 65 F. Supp. 3d 840, 859 (N.D. Cal. 2014), aff'd, 856 F.3d 605 (9th Cir. 2017).

***Corporate Scienter***. The Ninth Circuit "has not adopted the corporate scienter doctrine." *Hershewe v. Joyy Inc.*, 2021 WL 6536670, at *10 (C.D. Cal. Nov. 5, 2021). Regardless, Plaintiff's claim of corporate scienter relies on allegations that do not rise to the "requisite level of scienter with respect to at least one of the Individual Defendants." *See Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *3 (C.D. Cal. Nov. 1, 2012); *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008) (rejecting notion that "scienter could be imputed to the company as a whole" "so long as any employee at [the company] had knowledge of the violation of any law"); *In re Maxwell Techs., Inc., Sec. Litig.*, 18 F.Supp.3d 1023, 1032 (S.D. Cal. 2014) (requiring "scienter as to the individuals who were responsible for the statements"). Because Plaintiff fails to plead scienter as to any of the Individual Defendants here, he fails to plead scienter as to Enochian.

###### 5.     Holistic Analysis

Considering the allegations holistically does not change this conclusion: comparing the "malicious and innocent inferences cognizable from the facts pled," *Zucco*, 552 F.3d at 991, the far more compelling inference is that Enochian was lied to and deceived by an individual who effectively duped the American medical and scientific research community for over a decade.  As Plaintiff aptly notes, Gumrukcu is a "serial fraudster who has lied, cheated, and even killed," (¶ 6), *a man who was willing to have someone killed to keep his history of fraud from being revealed*. Yet Plaintiff accuses the Company of fraud for not unearthing an alleged complex, international web of deceit that took investigative journalists and short sellers— individuals with a wealth of experience in intensive factual discovery—years to uncover.  Once Enochian discovered Gumrukcu's fraud, it sued him.  Like investors and the medical community, Enochian is a victim of Gumrukcu's misconduct.[19]

## V.     PLAINTIFF'S 20(A) CLAIM SHOULD BE DISMISSED

Because the Complaint does not state a primary violation, the Section 20(a) claim fails.  *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012). In any event, Plaintiff's conclusory allegation that the individual Defendants are "control persons" is insufficient.  *Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016); *Sollberger v. Wachovia Sec., LLC*, 2010 WL 11595839, at *3 (C.D. Cal. Feb. 22, 2010).

## VI.     CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

---

[19] The Complaint does not appear to allege a scheme claim under Rule 10b-5(a) and (c). (*See* Compl. at Count I; ¶¶ 142–43.).  However, if Plaintiff claims he is alleging a scheme claim in his opposition, it fails because it would simply repackage its disclosure claim.  "A defendant may only be liable as part of a fraudulent scheme based on misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations or omissions." *Dias v. Spartan Micro, Inc.*, 2023 WL 2629870, at *8 (C.D. Cal. Mar. 3, 2023).  It is not enough to simply repackage Rule 10b-5(b) misrepresentation allegations.  *See id.* ("Plaintiffs have not alleged any facts separate from what was already alleged in their 10b-5(b) claims").  Any attempt by Plaintiff here should fail.

Dated:        March 15, 2024                    Respectfully submitted,
                                                COOLEY LLP


                                                By:    _/s/ Brett De Jarnette_
                                                       Brett De Jarnette

                                                Attorneys for Defendants
                                                *ENOCHIAN BIOSCIENCES INC., DR.*
                                                *MARK DYBUL, RENE SINDLEV, and*
                                                *CARL SANDLER*

MEMORANDUM ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE