COOLEY LLP
PATRICK E. GIBBS (183174)
(pgibbs@cooley.com)
BRETT H. DE JARNETTE (292919)
(bdejarnette@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

RONAN A. NELSON (346553)
(rnelson@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:   (858) 550-6000
Facsimile:    (858) 550-6420

Attorneys for Defendants
ENOCHIAN BIOSCIENCES INC.,
DR. MARK DYBUL, RENE SINDLEV,
and CARL SANDLER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CHOW, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENOCHIAN BIOSCIENCES INC., DR. MARK DYBUL, RENE SINDLEV, and CARL SANDLER,<br><br>Defendants. | Case No. 8:22-cv-01374-JWH-JDE<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Date:          June 28, 2024<br>Time:         9:00 A.M.<br>Courtroom: 9D, 9th Floor<br>Judge:        Hon. John W. Holcomb |

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION .......................................................................................... 6

II.   PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER ..................... 8

   A.   Knowledge of Alleged "Red Flags" Does Not Create a Strong
      Inference of Deliberate Recklessness. ........................................................ 9

   B.   Plaintiff Fails to Allege Particularized Facts Showing That Any
      Investigation Would Have Revealed Gumrukcu Had No Medical
      Degree. ...................................................................................................... 14

   C.   Plaintiff's Remaining Theories of Scienter are Similarly Unavailing. ...... 15

III.  PLAINTIFF'S 20(a) CLAIM SHOULD BE DISMISSED ......................... 17

IV.   CONCLUSION ......................................................................................... 17

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*Aramic LLC v. Revance Therapeutics, Inc.*,
  2024 WL 1354503 (N.D. Cal. Apr. 2, 2024) ....................................................9, 13

*Bao v. SolarCity Corp.*,
  2016 WL 54133 (N.D. Cal. Jan. 5, 2016) .........................................................17

*Bruce v. Suntech Power Holdings Co.*,
  2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ..................................................13

*Buttonwood Tree Value Partners, LP v. Sweeney*,
  910 F.Supp.2d 1199 (C.D. Cal. 2012)................................................................16

*Cheng v. Activision Blizzard, Inc.*,
  2022 WL 2101919 (C.D. Cal. Apr. 18, 2022)..................................................6, 8

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ..................................................12

*Espy v. J2 Glob., Inc.*,
  99 F.4th 527 (9th Cir. 2024)................................................................8, 9, 10

*Fadia v. FireEye, Inc.*,
  2016 WL 6679806 (N.D. Cal. Nov. 14, 2016)...................................................10

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  607 F.Supp.3d 381 (S.D.N.Y. 2022).............................................................12, 13

*Limantour v. Cray Inc.*,
  432 F. Supp. 2d 1129 (W.D. Wash. 2006) .........................................................11

*Maresca v. Soufun Holdings Ltd.*,
  2016 WL 6102318 (C.D. Cal. Oct. 18, 2016) .............................................10, 14

*Newman v. Family Management Corp.*,
  748 F. Supp. 2d 299 (S.D.N.Y. 2010), *aff'd,* 530 F. App'x 21 (2d
  Cir. 2013)........................................................................................................15

*Ng v. Berkeley Lights, Inc.*,
  2024 WL 695699 (N.D. Cal. Feb. 20, 2024)......................................................12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

TABLE OF AUTHORITIES
(continued)

PAGE(S)

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
  2018 WL 3126393 (N.D. Cal. June 26, 2018) ..................................................... 16

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ............................................................................ 9

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ....................................................................... 9, 15

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010). ......................................................................... 8, 9

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2005 WL 8158825 (S.D. Cal. Mar. 30, 2005) .................................................... 9

*In re Pixar Sec. Litig.*,
  450 F. Supp. 2d 1096 (N.D. Cal. 2006) ............................................................ 16

*Poptech, L.P. v. Stewardship Investment Advisors, LLC,*
  849 F.Supp.2d 249 (D. Conn. 2012) ................................................................. 11

*In re Stable Road Acquisition Corp.,*
  2022 WL 2762213 (C.D. Cal. July 13, 2022) ................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................... 7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ............................................................................. 9

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018) ............................................................................. 9

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F.Supp.2d 1148 (C.D. Cal. 2007) .............................................................. 10

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .................................................................. 8, 10, 17

**Statutes**

15 U.S.C. § 78j(b) ................................................................................................. 9

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

**TABLE OF AUTHORITIES**
**(continued)**

PAGE(S)

15 U.S.C. § 78t(a) ............................................................................................................. 17

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

REPLY ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

## I.   INTRODUCTION

The Opposition confirms that Plaintiff fails to state a securities fraud claim because he fails to plead a cogent and compelling inference of scienter.  Plaintiff's core theory is that Enochian falsely called Gumrukcu a "Dr." between January 2018, and June 2022, while knowing or being deliberately reckless in not knowing, that Gumrukcu had no medical degree.  But Plaintiff does not dispute his failure to plead particularized facts showing any Defendant knew Gumrukcu was not a medical doctor.  Nor does he point to any emails, reports, confidential witnesses, or conversations showing any Defendant believed Gumrukcu was not a doctor, forged his academic records, or that they were misleading investors.

Rather, Plaintiff incorrectly argues that Defendants were "confronted by numerous facts [*i.e.,* "red flags"] about Gumrukcu but ignored and downplayed them instead of investigating and disclosing." (Opp. at 20.)  In doing so, Plaintiff attempts to lessen the standard for pleading a strong inference of deliberate recklessness, which requires "kn[owledge of] facts *so obvious* that they must have been aware that they were misleading the public." *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *11 (C.D. Cal. Apr. 18, 2022).

Not surprisingly, Plaintiff fails to explain how these alleged "red flags" – purported "concerns" raised about Gumrukcu, a burglary plea, and foreign articles – made it "so obvious" that Gumrukcu was not a doctor or that Enochian was misleading investors.  Recognizing that such information alone fails to establish deliberate recklessness, Plaintiff suggests that Enochian should have investigated Gumrukcu.  But he fails to plead facts showing Enochian did not conduct an investigation.  More importantly, this theory fails because it is premised on the unsupported assumption that a "cursory" investigation would have revealed that Gumrukcu was not a doctor. (¶ 9.)  Indeed, Plaintiff does not address how a "cursory" investigation would have uncovered anything about Gumrukcu.  This

**REPLY ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE**

omission is telling, as this was a key focus of Defendants' Motion, and it dooms Plaintiff's securities fraud claims. (Mot. at 25–28.)

Instead of credibly addressing Defendants' arguments, Plaintiff contends that Defendants improperly introduce extrinsic evidence to tell a "counternarrative." (Opp. at 5.)   In other words, Plaintiff suggests that the Court cannot dismiss the Complaint unless it grants Defendants' request for judicial notice.  Plaintiff is wrong.  Just because the parties disagree as to whether Plaintiff has adequately pled a securities fraud claim does not mean that there is a factual dispute.  The Complaint alleges no particularized fact showing that each Defendant knew or were deliberately reckless in not knowing that Gumrukcu was not a doctor.  The Court need not look outside the four corners of the Complaint to reach that conclusion.  Defendants only ask the Court to consider public documents that Plaintiff selectively omits from the Complaint to put his cherry-picked allegations in their proper context.  Plaintiff ignores that both Congress and the Supreme Court mandate courts to consider such documents when they are incorporated by reference in a complaint or subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiff's quibbling rings especially hollow given he does not dispute the facts that Defendants seek judicial notice of—that Gumrukcu published research, filed and obtained patents, received public praise and conference invitations from prominent medical researchers, attended some medical school, and convinced Enochian's co-founder to perform a medical procedure on him.  The most compelling inference raised by the Complaint's allegations and facts subject to judicial notice is that Enochian was lied to and deceived by an individual who effectively duped the American medical and scientific research community for years.  As even Plaintiff notes, Gumrukcu is a "serial fraudster who has lied, cheated, and even killed." (¶ 6.) Yet Plaintiff accuses the Company of fraud for not unearthing an alleged complex international web of deceit that they do not dispute took journalists and short-sellers

REPLY ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE

years of travel, interviews, and investigation to uncover.  Nor does Plaintiff contest that once Enochian discovered Gumrukcu's fraud, it sued him.  Like investors and the medical community, Enochian is a victim of Gumrukcu's misconduct.  Plaintiff's theory may "make for interesting reading but not an actionable securities fraud claim." *Espy v. J2 Glob., Inc.*, 99 F.4th 527, 533 (9th Cir. 2024).

The Complaint should be dismissed with prejudice.

## II.   PLAINTIFF FAILS TO ADEQUATELY PLEAD SCIENTER

Plaintiff fails to plead a strong inference of scienter, which requires particularized facts showing intentional or deliberately reckless conduct.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009). Importantly, "[t]he key to pleading intentional or reckless conduct is pleading facts that show that when defendants made the allegedly false statements, they ***knew they were false***, or ***knew facts 'so obvious that they must have been aware' that they were misleading the public.***"  *Cheng*, 2022 WL 2101919, at *11.

The Complaint alleges that Defendants "knowingly hid Gumrukcu's falsified credentials."  (¶ 7.)  But Plaintiff seemingly abandons this theory in his Opposition. He does not address the Motion's five pages explaining how Plaintiff failed to plead particularized facts showing Defendants "knew" Gumrukcu was not a doctor or that their public statements were false.  (Mot. at 20–24.)  Nor does he point to specific facts to suggest that Defendants ***knew*** Gumrukcu falsified his credentials.  As a result, Plaintiff effectively concedes his failure to plead actual knowledge of falsity.

Plaintiff instead argues that Defendants were "deliberately reckless" because they were "confronted with numerous warnings about Gumrukcu that raised 'reasonable grounds to believe material facts existed that were misstated or omitted [*i.e.*, repeated statements about Gumrukcu's background], but [Defendants] nonetheless failed to obtain and disclose such facts although [they] could have done so without extraordinary effort.' *In re Oracle Corp.*, 627 F.3d at 390."  (Opp. at 16.) In doing so, Plaintiff cites language from an order in *Oracle*, that actually dismissed

the case on scienter grounds. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 391 (9th Cir. 2010). He also ignores how challenging it is to plead a strong inference of deliberate recklessness, as repeatedly articulated by Courts within the Ninth Circuit, including another *Oracle* decision that made clear that: "recklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004).

Specifically, "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of deliberate recklessness." *Aramic LLC v. Revance Therapeutics, Inc.*, 2024 WL 1354503, at \*13 (N.D. Cal. Apr. 2, 2024) (quoting *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012)). And because Plaintiff asserts omissions-based claims, he must plead "a highly unreasonable omission, involving . . . an ***extreme departure*** from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is ***either known to the defendant or is so obvious that the actor must have been aware of it***." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). Plaintiff does not dispute that this is the correct standard. Nor does he contest that the standard is "demanding" and "not easy to satisfy." *Espy*, 99 F.4th at 533; *Webb v. Solarcity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018).

Here, Plaintiff fails to plead that knowledge of supposed "red flags" raised a strong inference of scienter. Nor does he plead facts showing that a "cursory" investigation would have revealed Gumrukcu was not a doctor, which is the linchpin of his scienter theory. The deficiencies compel dismissal.

### A. Knowledge of Alleged "Red Flags" Does Not Create a Strong Inference of Deliberate Recklessness.

Plaintiff is wrong that certain information that he calls "red flags" made it "so obvious" that Gumrukcu had no medical degree or that Enochian was misleading investors, so as to constitute deliberate recklessness. *In re Peregrine Sys., Inc. Sec.*

*Litig.*, 2005 WL 8158825, at *44 (S.D. Cal. Mar. 30, 2005) ("allegations that the defendant possessed knowledge of facts that are later determined by a court to have been material, without more, is not sufficient to demonstrate that the defendant *intentionally withheld* those facts from, or *recklessly disregarded* the importance of those facts … to deceive, manipulate, or defraud."); *Espy*, 99 F.4th at 539 (alleging knowledge of "reports" did not raise an inference of knowledge or intent to cover up omitted information in reports).

First, Plaintiff improperly assumes, based on a 2022 *Wall Street Journal* article, that Eric Leire "began to suspect" in 2019 that Gumrukcu fabricated his credentials and he "raised concerns" with the Board. (Opp. at 16.) But Plaintiff fails to substantiate his assumptions with particularized facts. *In re Wet Seal, Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1172 (C.D. Cal. 2007) ("[c]onclusory allegations [ ] are no more sufficient if they come from a newspaper article than from plaintiff's counsel"). Specifically, Plaintiff only claims that he verified the "statements quoted" in the *Wall Street Journal*. (¶ 114.) But Leire is only quoted as saying "I thought the guy was a liar. Maybe just, you know, taking liberty with science …. But I thought the guy would not hurt a fly." (Ex. 19 at 217.) There are no quotes attributed to Leire regarding Gumrukcu's credentials, let alone what specifically he said to anyone at Enochian about Gumrukcu (if anything). (Ex. 19 at 217); *Zucco*, 552 F.3d at 996–98 (allegations relying on hearsay within hearsay "unreliable" and insufficient to support scienter).

Regardless, Plaintiff's insistence that Leire "raised concerns" to the Board is insufficient to plead a strong inference of scienter under the PSLRA. "[A]t a minimum, [p]laintiffs needed to have provided information about precisely what was said by the parties in these meetings, which facts the [d]efendants were exposed to, and why this exposure supports an inference of scienter." *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *16 (N.D. Cal. Nov. 14, 2016); *Maresca v. Soufun Holdings Ltd.*, 2016 WL 6102318, at *7 (C.D. Cal. Oct. 18, 2016) (no scienter where "Plaintiffs

do not allege to whom the [employee] spoke about falsified transactions … or what the [employee] reported."). Falling far short of the PSLRA's requirements, Plaintiff fails to plead what Leire said, when, where, and to whom; the factual basis for any purported concerns; whether any individual Defendant was present; how anyone reacted; and what they said or did in response. His failure to plead any these foundational details is fatal and compels dismissal of the Complaint.

Plaintiff misguidedly cites two cases for the proposition that "red flags" are sufficient to establish deliberate recklessness. But each involved specific allegations that defendants actually knew information that should have been disclosed. In *In re Stable Road Acquisition Corp.*, plaintiff alleged in detail that federal agencies told the defendants their target's CEO posed an "unacceptable [national] security risk," but that the company failed to disclose that determination to investors. 2022 WL 2762213, at *3 (C.D. Cal. July 13, 2022). In *Poptech, L.P. v. Stewardship Investment Advisors, LLC*, the defendant company represented that they would conduct thorough due diligence, but failed to do so. 849 F.Supp.2d 249, 265, 270 (D. Conn. 2012). Unlike *Poptech*, Plaintiff fails to plead specific facts showing that Defendants did not conduct an investigation about Gumrukcu's credentials, and much less any representations during the class period about the nature of any investigation. In contrast to his cases, Plaintiff fails to plead specific facts showing that Defendants knew Gumrukcu had no medical degree.

Second, allegations attributed to Wolfe that he was terminated for raising concerns about Gumrukcu are inapposite for similar reasons. (Opp. at 17.) Plaintiff still fails to identify when and to whom Wolfe allegedly told that "Gumrukcu was a 'convicted felon.'" (Mot. at 23; ¶ 58); *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1155 (W.D. Wash. 2006) (no scienter where former employee failed to allege that the information was reported to defendants). Nor does Plaintiff dispute that "the only thing [Wolfe] knew about Gumrukcu's past in 2019 was 'the rumor that he had a bounced check.'" (Mot. at 24; Ex. 21 at 243.) And Plaintiff fails to explain how a

bounced check creates a cogent and compelling inference that Gumrukcu was not a medical doctor (it does not).

Third, Plaintiff's reliance on a White Diamond Research report commenting on "Gumrukcu's criminal background and [noting] that they could not confirm his academic history," and a January 2020 *MedWatch* article that "[raised] questions about Gumrukcu's lack of research and civil lawsuits," is misplaced.[1] (Opp. at 17). The Opposition completely ignores that short-seller reports are inherently unreliable because their authors have something to gain from a decrease in the Company's stock price. *Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *9 (N.D. Cal. Feb. 20, 2024) (assessing short-seller report "with caution" because short-sellers have a "financial interest in [a company's] decline."). Nor does Plaintiff dispute that conclusory allegations or speculation from third-party articles are insufficient to plead a strong inference of scienter. White Diamond is no different, nor did it affirmatively claim that Gumrukcu fabricated his credentials. *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *28 (S.D.N.Y. Sept. 29, 2014) (*Wall Street Journal* speculation tying arrest of Chinese official to company misconduct insufficient to establish a strong inference of scienter).

Plaintiff's citation to *Karimi v. Deutsche Bank Aktiengesellschaft* to establish deliberate recklessness, proves Defendants' point, as that case involved far more credible red flags. 607 F.Supp.3d 381, 388 (S.D.N.Y. 2022). In *Karimi*, plaintiff alleged that a bank misled investors by touting its anti-money laundering systems while not disclosing the system's known deficiencies. *Id*. The Court held that plaintiffs pled a strong inference of scienter with allegations of internal audits attributed to eleven confidential witnesses, government investigations, and

---

[1] Plaintiff claims that "[i]n response, [Dr.] Dybul affirmed Gumrukcu's aptitude for science, reiterating that Gumrukcu had the necessary qualifications." (Opp. at 12.) He is wrong. Dr. Dybul only expressed his personal understanding about Gumrukcu's experience. (¶ 63). Plaintiff certainly does not plead facts showing Dr. Dybul knew Gumrukcu was not a doctor at the time he made that statement.

regulatory warnings about the issues known to the individual defendants. *Id.* at 397–98. Unlike *Karimi*, there are no credible allegations showing Defendants knew or were deliberately reckless in not knowing that Gumrukcu was not a doctor.

<u>Fourth</u>, Plaintiff's argument that Sindlev "admitted to Hindenburg that he knew about Gumrukcu's felony convictions but said nothing," (Opp. at 18), is irrelevant. Knowledge of a publicly disclosed fact cannot form the basis of a securities fraud claim, particularly when that publicly disclosed fact is not inconsistent with the challenged statements. *See Revance*, 2024 WL 1354503, at *13 (finding "knowledge of [ ] issues alone is insufficient" to show scienter.). Gumrukcu having a felony conviction is not inconsistent with, or in any way related to, his purported educational background. Indeed, the Company never made any representations about Gumrukcu's criminal history, lack thereof, or about his personal life. Based purely on hindsight, Plaintiff argues that awareness of one criminal conviction must have led to the discovery that Gumrukcu had fabricated his medical degrees. But as the "thousands of documents and dozens of sources"[2] reviewed for the Hindenburg Report reflect, Plaintiff's theory that knowledge of a burglary conviction would lead to knowledge that Gumrukcu was not a doctor has no merit without making substantial inferential leaps. And Sindlev's "admi[ssion]" that "Defendants had done due diligence into Gumrukcu" (Opp. at 17) directly contradicts Plaintiff's assertion that no diligence was done. *Bruce v. Suntech Power Holdings Co.*, 2013 WL 6843610, *5–6 (N.D. Cal. Dec. 26, 2013) (allegations of "later-disclosed fraud and admitted irregularities" suggested an absence of due diligence but were insufficient to allege scienter as it was "equally plausible [that the defendant] was the victim of fraud.").

---

[2] Hindenburg Research, *Miracle Cures and Murder for Hire: How A Spoon-Bending Turkish Magician Built a $600 Million Nasdaq-Listed Scam Based on a Lifetime of Lies* (June 1, 2022), https://hindenburgresearch.com/enochian/

**B.      Plaintiff Fails to Allege Particularized Facts Showing That Any Investigation Would Have Revealed Gumrukcu Had No Medical Degree.**

Recognizing that none of the alleged "red flags" create an inference of scienter in and of themselves, Plaintiff suggests that they should have compelled Defendants to investigate Gumrukcu's credentials.  (Opp. at 20.)  Plaintiff does not dispute that his theory, as articulated in the Complaint, is premised on the assumption that a "cursory investigation would have revealed . . . [Gumrukcu] was not a doctor or a researcher and did not hold any degrees."  (¶ 9.)  But Plaintiff fails to explain in his Opposition (much less allege particularized facts in the Complaint) how a "cursory" investigation would have revealed that Gumrukcu had no medical degrees.  Nor does he allege facts showing whether Enochian conducted an investigation, the extent of any investigation, who was retained for such investigation, what the results were, and when. *Maresca*, 2016 WL 6102318, at *7 ("speculation, devoid of factual substance, cannot satisfy the pleading standards of the PSLRA.").

Critically, Plaintiff does not dispute that Hindenburg's investigation was far from "cursory."  He does not contest that such investigation involved interviews, review of foreign court documents, communications with foreign medical facilities and universities, and other "first-hand evidence."  (¶ 11.)  Nor does he dispute that Hindenburg went so far as to obtain "a full copy of [a] case file after being granted legal permission by one of [Gumrukcu's] alleged victims."  Rather, he argues in a conclusory fashion, and without any authority, that Enochian was differently positioned than investigative journalists and the broader medical community.  (Opp. at 20.)  But Plaintiff does not attempt to explain how Enochian, but not others, would have discovered the truth about Gumrukcu through a "cursory" investigation, especially when Gumrukcu was not an employee.  (¶ 108.) In other words, Plaintiff does not plead particularized facts that Enochian was better positioned than investigative journalists to obtain confidential foreign university documents, information from international victims sealed in court filings, and a Russian black

market forged diploma. His failure to address this issue dooms the Complaint.[3]

*Newman v. Family Management Corp.* is instructive. 748 F. Supp. 2d 299, 306, 311 (S.D.N.Y. 2010), *aff'd,* 530 F. App'x 21 (2d Cir. 2013). There, the plaintiff alleged that defendants acted with scienter by ignoring "red flags" suggesting that Bernie Madoff was operating a Ponzi scheme. *Id.* at 307. Like this case, *Newman* was premised on the assumption that an investigation would have "undoubtedly led to discovery of the fraud." *Id.* at 309. The court dismissed the complaint because plaintiff failed to plead particularized facts showing that an investigation would have revealed the Ponzi scheme. *Id.* at 311. As in *Newman*, Plaintiff fails to allege that a cursory investigation would have revealed that Gumrukcu had no medical degree.

### C.     Plaintiff's Remaining Theories of Scienter are Similarly Unavailing.

***Core Operations***. Plaintiff does not dispute the fact that the core operations doctrine can only be invoked in rare circumstances. He ignores that the doctrine is irrelevant because he fails to adequately plead that anyone at Enochian had information that, if imputed to the individual Defendants, would raise a strong inference of scienter. Regardless, Plaintiff fails to plead facts showing the doctrine can even be invoked here. Instead, he claims that Gumrukcu was "prominent enough" that "it would be absurd to suggest" Defendants were unaware of his false credentials (Opp. at 20), and that Gumrukcu's "intimate involvement in the primary asset of the Company" meant Defendants "were responsible for investigating Gumrukcu's background." (Opp. at 22.) But "simply alleging" that a product or service makes up a company's core business does not give rise to an inference of scienter. *In re NVIDIA*, 768 F.3d at 1064–65 (denying core operations even when "the problem concerned [NVIDIA's] flagship product and was cause for concern to

---

[3] Plaintiff fails to credibly distinguish *Stanley* and *DSAM*. He argues that "that the defendant [in *Stanley*] did conduct an adequate investigation" and that "there is no indication whatsoever that the Defendants [here] followed up in a meaningful way" on concerns regarding Gumrukcu. (Opp. at 20.) Yet Plaintiff does not refute that he "pleads no facts showing what a 'cursory' investigation means, nor how it would have uncovered that Gumrukcu had no medical degree." (Mot. at 27.) Nor does he explain how *DSAM* is inapplicable simply because it involved a financial audit.

[NVIDIA's] two largest customers"). Moreover, Plaintiff fails to explain how Defendants' involvement in Enochian's business would have necessarily informed them of Gumrukcu's false credentials. *Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2018 WL 3126393, at *9 (N.D. Cal. June 26, 2018) ("Plaintiffs have not alleged specific involvement of the [d]efendants ***in the details of the purported misrepresentations***, and claims regarding the size of the company do not remedy this defect.").

***Stock Distributions***. With no legal authority, Plaintiff incorrectly argues that the "assignment" and "distribution" of shares to Dybul and Sandler support a strong inference of scienter. (Opp. at 22.) He does not dispute that the only way Dybul and Sandler could have profited from such shares was if they sold them during the class period at high prices. Glaringly, he does not allege that there were any stock sales during the class period. (*See* Mot. at 28.) Nor does he dispute that the absence of stock sales cuts ***against*** any inference of scienter. *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1107 (N.D. Cal. 2006) (the absence of insider trading "undermines any inference of scienter."). The fact that Dybul and Sandler acquired shares and held them through three alleged stock drops dispels any suggestion of an intent to defraud.

***Gumrukcu's Payment Structure***. Again, with no legal authority, Plaintiff speculates that Gumrukcu was not paid as an Enochian employee because he was convicted of a crime. (Opp. at 23.) But the Opposition fails to address Defendants' arguments explaining that a plea to "an unrelated burglary charge does not render any statement misleading or support a strong inference of fraudulent intent." (Mot. at 24 n.17.) *See Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F.Supp.2d 1199, 1207–08 (C.D. Cal. 2012) ("It is simply 'not enough for [p]laintiffs to state facts giving rise to a mere speculative inference of deliberate recklessness, or even a reasonable inference of deliberate recklessness.'"). This omission effectively concedes that Gumrukcu's alleged payment structure is irrelevant.

***Holistic Analysis***. Plaintiff fails to plead that holistically, the most compelling inference is that Defendants intended to defraud investors. Rather, he claims that

16

Defendants either must have known or were deliberately reckless in not knowing he fabricated his medical credentials and was an international con artist.  (Opp. at 24.) This is not the most compelling inference based on the Complaint's allegations and the facts subject to judicial notice.  Plaintiff does not dispute that Gumrukcu's fraud went undiscovered for years nor that it took intensive research and travel by professional investigators to uncover that Gumrukcu was not a doctor.  They fail to explain how it was an "extreme departure" from ordinary care to not discover that Gumrukcu had no medical degree, as opposed to simple or even gross negligence. Nor do they articulate any motive when Defendants did not sell a single share of stock at allegedly high prices.

Here, the far more compelling inference is that Enochian and the individual Defendants were the victims of fraud.  Plaintiff admits that Gumrukcu is a "serial fraudster who has lied, cheated, and even killed," (¶ 6), *a man who was willing to have someone killed to keep his history of fraud from being revealed*.  Nor does Plaintiff dispute that Gumrukcu went to great lengths to hold himself out as a doctor such as obtaining patents, writing papers, founding research institutes, and speaking at medical conferences. (Mot. at 11–13.)  And while Plaintiff contends that Enochian was differently situated from the medical community at large, he fails to plead particularized facts showing how Enochian acted with deliberate recklessness despite the medical community being duped by the same individual.  Plaintiff's theory does not meet the PSLRA's heightened and exacting pleading standards.

## III.   PLAINTIFF'S 20(A) CLAIM SHOULD BE DISMISSED

Plaintiff's Section 20(a) claim fails because he has failed to allege a primary violation—a failure which Plaintiff does not dispute—and therefore warrants dismissal of this claim.  *Zucco*, 552 F.3d at 990; *Bao v. SolarCity Corp.*, 2016 WL 54133, at *9 (N.D. Cal. Jan. 5, 2016).

## IV.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:   June 14, 2024

Respectfully submitted,
COOLEY LLP


By: */s/ Brett H. De Jarnette*
     Brett H. De Jarnette

Attorneys for Defendants
*ENOCHIAN BIOSCIENCES INC.,*
*DR. MARK DYBUL, RENÉ SINDLEV,*
*and CARL SANDLER*

REPLY ISO MOTION TO
DISMISS AMENDED COMPLAINT
8:22-CV-01374-JWH-JDE