# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

ALBERT CHOW, and
JEAN-PIERRE MURRAY, Individually
and On Behalf of All Others
Similarly Situated,

                Plaintiffs,

      v.

ENOCHIAN BIOSCIENCES INC.,
MARK DRYBUL,
LUISA PUCHE,
RENE SINDLEV,
CAROL L. BROSGART,
GREGG ALTON,
JAMES SAPIRSTEIN,
CARL SANDLER,
HENRIK GRØNFELDT-SØRENSEN,
JAYNE MCNICOL, and
EVELYN D'AN,

                Defendants.

Case No. 8:22-cv-01374-JWH-JDE

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 106]**

Before the Court is the unopposed motion of Lead Plaintiff Jean-Pierre Murray for preliminary approval of the class action settlement in this case.[1] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons explained herein, the Motion is **GRANTED**.

## I. BACKGROUND

### A. Allegations and Procedural Summary

Defendant Enochian Biosciences Inc. is a biopharmaceutical company.[2] It was formed in 2018, when Defendant Rene Sindlev caused another company, non-party DanDrit Biotech USA, to acquire a then-failing company founded by non-party Serhat Gumrukcu.[3] Defendant Mark Dybul was the CEO of Enochian, and Defendant Carl Sandler was an independent director.[4]

Plaintiffs allege that, for several years, Defendants passed Gumrukcu off as a "world-class medical doctor and researcher and to paint his research as extremely valuable."[5] Enochian's website displayed Gumrukcu's "impressive" resume, which stated that Gumrukcu "has been at the forefront of cell, gene and immunotherapy for more than a decade."[6] And Enochian itself was formed primarily to license Gumrukcu's HIV therapy, which Enochian valued at $127 million—88% of Enochian's total assets.[7]

---

[1]     Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the "Motion") [ECF No. 106].

[2]     Am. Compl. (the "Amended Complaint") [ECF No. 68] ¶ 3.

[3]     *Id.*

[4]     *Id.* at ¶¶ 19 & 20.

[5]     *Id.* at ¶ 4.

[6]     *Id.*

[7]     *Id.* at ¶ 5.

Gumrukcu, however, was not a physician.[8] He was in fact a "dangerous serial fraudster, who has lied, cheated, and even killed,"[9] including by stealing money from a cancer patients so that Gumrukcu could "administer[] bogus treatments" that killed those patients.[10] In June 2022, Hindenberg Research exposed Gumrukcu's falsified credentials, and Enochian's stock fell dramatically.[11] A short time later, the *Wall Street Journal* published a story that suggested that Enochian's leaders knew or suspected that Gumrukcu had fabricated his credentials, which caused Enochian's stock price to fall farther.[12]

Plaintiff Albert Chow commenced this action on behalf of himself and other Enochian shareholders in July 2022.[13] That same month another set of plaintiffs filed a nearly identical action—the *Manici* Action—against Enochian and its directors.[14] Ultimately the *Manici* Action was dismissed, and the Court appointed Murray as the Lead Plaintiff.[15]

Plaintiffs amended their Complaint in December 2023;[16] they now assert two claims for relief: (1) violation of Section 10(b) of the Exchange Act and Rule 10b-5; and (2) violation of Section 20(a) of the Exchange Act.[17] Defendants

---

[8] *Id.* at ¶ 6.

[9] *Id.*

[10] *Id.*

[11] *Id.* at ¶ 11.

[12] *Id.* at ¶ 12.

[13] *See* Compl. [ECF No. 1].

[14] Order re Mots. for Appointment Lead Pl., Approval of Selection of Lead Counsel, & Consolidation (the "Consolidation Order") [ECF No. 64] 2.

[15] *See generally id.*

[16] *See generally* Amended Complaint.

[17] *See generally id.*

moved to dismiss the Amended Complaint,[18] which the Court denied during a hearing in June 2024.[19]

Plaintiffs filed the instant Motion in December 2024.[20]

**B.    Terms of Settlement**

In September 2024, the parties engaged in a mediation session with Jed Melnick, a mediator with JAMS.[21]  Following that mediation session, Mr. Melnick issued a recommendation to resolve the litigation.[22]  The parties accepted that recommendation, and they executed a Stipulation of Settlement in November 2024.[23]

The following is a summary of the proposed settlement agreement:

**1.    Settlement Class**

The proposed settlement class is:

all persons and entities who purchased or otherwise acquired Enochian common stock between January 17, 2018, and June 27, 2022, both dates inclusive, and who were damaged thereby. Excluded from the Settlement Class are (1) Defendants and any affiliates or subsidiaries thereof; (2) present and former officers and directors of Enochian, and their immediate family members . . .; (3) any entity in which any Defendant has or has had a controlling interest; (4) Serhat Gumrukcu, Anderson Wittekind, and any companies or entities currently or previously controlled by Serhat

---

[18]    *See* Defs.' Mot. to Dismiss (the "Motion to Dismiss") [ECF No. 74].

[19]    *See* Minute Order re Hr'g re the Motion to Dismiss [ECF No. 90].

[20]    *See generally* Motion.

[21]    *See generally* Stipulation of Settlement [ECF No. 106-2].

[22]    *See id.*

[23]    *See generally id.*

Gumrukcu and/or Anderson Wittekind, either individually or jointly; and (5) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding four categories. Also excluded from the Settlement Class are any Settlement Class Members that validly and timely request exclusion in accordance with the requirements set by the Court in the Notice of Pendency and Proposed Settlement of Class Action.[24]

**2.      Settlement Amount**

Pursuant to the Stipulation of Settlement, Enochian will make a non-reversionary, all-cash payment of $2.5 million, which will be paid into interest-bearing escrow accounts within 30 days of an order granting preliminary approval of the settlement.[25] In exchange, the Stipulation of Settlement provides for customary mutual releases, including releases of the claims that were asserted or that could have been asserted, in the Amended Complaint.[26] The releases specifically exclude derivative claims raised in four pending cases.[27]

The settlement fund will be distributed on a *pro rata* basis to class members who submit valid proof of claim forms.

**3.      Notice Plan**

Plaintiffs have retained Epiq, a leading settlement and claims administrator, to administer the notice and claims process.[28] Pursuant to the

---

[24]    *Id.* at ¶ 1.25.

[25]    *Id.* at ¶ 2.3.

[26]    *Id.* at ¶ 1.20.

[27]    *Id.* Those cases are *Weird Science LLC v. Sindlev*, Case No. 2:24-cv-00645 (C.D. Cal.); *Midler v. Gumrukcu*, Case No. 22STCV33960 (L.A. Sup. Ct.); *Solak v. Gumrukcu*, Case No. 1:23-cv-00065 (D. Del.); and *Koenig v. Gumrukcu*, Case No. 2:22-cv-06871 (C.D. Cal.).

[28]    *See* Motion 26:20–27:4; Decl. of Joseph Mahan (the "Mahan Declaration") [ECF No. 106-9] ¶ 1; *see also* Motion, Ex. A-1 (the "Proposed

notice plan, if Epiq is appointed Settlement Administrator, then it will distribute, by direct mail, a postcard notice to all identified potential class members.[29] That Proposed Notice will direct class members to a case-specific website, where class members can submit claims electronically or request a proof of claim form.[30] The Proposed Notice will also provide a phone number for callers to contact Epiq.[31]

Additionally, Epiq "will take steps to provide notice to the vast majority of investors who hold their securities through a brokerage firm, bank, institution, or other third-party nominee."[32] Epiq will also publish a Summary Notice in *Investor's Business Daily* and transmit the Summary Notice over *PR Newswire*.[33] Epiq will also develop a notice program through which banner advertisements are published on pages of the Google Display Network and Yahoo! Finance website that are associated with finance, investment, and stock trading.[34]

### 4.    Attorneys' Fees and Awards

Upon final approval of the Settlement, Class Counsel[35] will petition the Court for an award of attorneys' fees. Those fees will be paid from the

---

Notice") [ECF No. 106-4], Motion, Ex. A-2 (the "Proposed Long-Form Notice") [ECF No. 106-5], Motion, Ex. A-3 (the "Proof of Claim") [ECF No. 106-6]; Motion, Ex. A-4 (the "Summary Notice") [ECF No. 106-7].

[29]    Mahan Declaration ¶ 6.

[30]    *Id.*

[31]    *Id.*

[32]    *Id.* at ¶ 7.

[33]    *Id.* at ¶ 14.

[34]    *Id.* at ¶ 15.

[35]    In October 2025, the Court appointed the law firm Bleichmar Fonti & Auld LLP as Lead Counsel. Consolidation Order 5.

settlement fund in an amount not to exceed 30%.[36]  Class Counsel will also seek litigation expenses in an amount not to exceed $300,000, plus interest, and an award to Lead Plaintiff not to exceed $7,500.[37]  Defendants have agreed not to take any position concerning the request for attorneys' fees.[38]

## II.  DISCUSSION

### A.    Preliminary Approval of the Proposed Settlement

#### 1.      Legal Standard

"Rule 23(e) [of the Federal Rules of Civil Procedure] imposes on district courts an independent obligation to ensure that any class action settlement is 'fair, reasonable, and adequate.'"  *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)).  "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

In determining whether a class settlement is "fair, reasonable, and adequate," a district court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;

---

[36]    Stipulation of Settlement ¶ 6.5; Proposed Notice 2.

[37]    *Id.*

[38]    *Id.* at ¶ 6.6.

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, a district court in the Ninth Circuit must consider the *Hanlon* factors, which include "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 2. Adequacy

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class. This analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation or "the actual outcome of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

Here, Class Counsel has adequately represented the class. Class Counsel are highly experienced, and they have performed competently throughout the

course of this litigation, including by defeating Defendants' motion to dismiss.[39] Class Counsel also negotiated a condition that required Defendants to provide sworn documentation confirming representations made during settlement negotiations. If those representations turn out to be false, Class Counsel has reserved certain rights, which further suggests that Class Counsel has adequately prosecuted this action and represented the interests of the class members.[40]

### 3.    Arm's Length Negotiations

In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Additionally, courts have recognized that "[t]he use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive." *See Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021).

Here, the Stipulation of Settlement is the product of a full-day mediation session with an experienced JAMS mediator, who recommended that the parties accept the Stipulation of Settlement.[41] Those facts support a finding that the settlement is the product of arm's-length negotiation. *See Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *5 (C.D. Cal. July 24, 2023) (approving a settlement reached through mediation with Mr. Melnick).

---

[39]    *See generally* Decl. of George N. Bauer in Support of the Motion (the "Bauer Declaration") [ECF No. 106-1].

[40]    *See generally* Stipulation of Settlement.

[41]    *Id*.

### 4.    Adequacy of Settlement

The third factor is whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to Class Members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.  This factor implicates several of the *Hanlon* factors.  *See Briseño*, 998 F.3d at 1022–23.

### a.    Cost, Risks, and Delays of Continuing Litigation

First, the court must consider whether the proposed settlement provides adequate relief to class members, taking into account the "costs, risks, and delay" of future litigation, support the adequacy of the settlement.  Pursuant to the Stipulation of Settlement, the class will receive a non-reversionary, all-cash payment of $2.5 million.  That amount represents 5.3% of Plaintiffs' total estimated potential recovery, which is higher than is typical in securities class actions.  *See, e.g.*, *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2023) (approving a $1.9 million settlement, which represented approximately 2% of the estimated potential recovery).

This outcome is favorable to the class because there are significant risks associated with proceeding with litigation in this case.  Defendants' financial position is unstable, because they no longer have any meaningful commercial product or revenue source.[42]  That instability has caused Defendants' financial positions to deteriorate over the course of this litigation, and Enochian has warned that it may be required to "seek bankruptcy protection or other

---

[42]    *See generally* Amended Complaint.

alternatives," which would significantly harm Plaintiffs' ability to pursue their claims.[43]

### b.    Effectiveness of Distributing Relief

Second, the court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

As described above, the Stipulation of Settlement incorporates a multi-pronged approach to providing class members with information regarding the proposed settlement. Pursuant to that plan, class members will be directed to submit Proof of Claim forms so that the settlement administrator can determine *pro rata* shares based upon the damages each class member suffered. That plan is consistent with established procedures for securities class settlements, and courts routinely approve similar plans. *See, e.g.*, *Farrar*, 2023 WL 5505981, at *4.

### c.    Attorneys' Fee Award

Third, the court must consider the attorneys' fee award. "At the preliminary approval stage, the Court need not make its final decision regarding the reasonableness of attorneys' fees and costs, but need only determine that the requested fees and costs are not the products of apparent collusion." *Hollis v. Union Pac. R.R. Co.*, 2018 WL 6273014, at *6 (C.D. Cal. Mar. 6, 2018). To

---

[43]    *See* Motion 16:6–8 (quoting Enochian's Form 10-K for the Fiscal Year ended July 30, 2023).

determine whether the requested fees and costs are the products of apparent collusion, a court must consider whether the settlement contains "red flags." *Briseno*, 998 F.3d at 1026. Red flags include: (1) an attorneys' fee award that represents "a disproportionate distribution of the settlement"; (2) a "clear sailing arrangement," by which the defendant agrees not to challenge an attorneys' fee award; and (3) a "reverter" clause, which provides that the defendant, and not the class members, will "receive[] the remaining funds if the court reduces the agreed-upon attorneys' fees." *Id.* at 1026–27.

Class Counsel has not yet made a request for attorneys' fees. However, the Court notes that at this stage, there does not appear to be any collusion between the parties. Class Counsel has agreed to request a fee award of no more than 30% of the settlement fund, and, although Defendants have agreed not to take a position on the fee request, there is no reverter clause included in the Settlement. *Cf. Briseño*, 998 F.3d at 1026–27.

### d.    Other Agreements

Fourth, the Court must evaluate any agreement made in connection with the proposed Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Class Counsel represents that they have identified all agreements made in connection with the Proposed Settlement, including confidential agreements regarding the number of opt-outs that could terminate the Settlement.[44]

### e.    Remaining *Hanlon* Factors

Finally, under *Hanlon*, the court must consider the extent of discovery completed and the stage of the proceedings. Here, the Court finds that Class Counsel and Lead Plaintiff possessed sufficient information to make an informed decision regarding settlement. Specifically, it is apparent from the filings made throughout the course of this litigation and from the Stipulation of Settlement

---

[44]    Motion 20:1–12.

that Class Counsel thoroughly investigated Defendants' conduct and financial position, including through consultations with experts.[45]

### 5. Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats Class Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among Class Members takes appropriate account of differences among their claims, and whether the scope of the release may affect Class Members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

Here, the Proposed Settlement treats class members equitably relative to each other because it provides that class members will receive *pro rata* shares of the Settlement Fund based upon their recognized losses.[46]

Accordingly, the Court concludes that it will likely be able to approve the Proposed Settlement.

### B. Preliminary Certification of the Proposed Settlement Class

#### 1. Legal Standard

Before granting preliminary approval of a class settlement, a court must conclude that "the court will likely be able to [] certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *9 (C.D. Cal. Feb. 26, 2021). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

---

[45] *See* Amended Complaint; Stipulation of Settlement.

[46] *See* Decl. of Chad Coffman (the "Coffman Declaration") [ECF No. 106-10] (describing the method for calculating *pro rata* shares).

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Id.* at 349.

Rule 23(a) imposes the following prerequisites on class actions: (1) the class is so numerous that a joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). *See* Fed. R. Civ. P. 23(a).

In addition, Rule 23(b) requires at least one of the following to be true for a class action to be maintained:

(1) prosecuting separate actions by or against individual Class Members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available

-14-

methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### 2.    Numerosity

"A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable." *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 684 (C.D. Cal. 2020) (citing *Hanlon*, 150 F3d at 1019)). "To be impracticable, joinder must be difficult or inconvenient." *Id.* Generally, numerosity is satisfied where a proposed class includes 40 or more members. *See id.* Numerosity is "assumed to have been met in class action suits involving nationally traded securities." *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015).

Over the class period, there was an average weekly trading volume of 590,922 shares, and there were over 53 million shares of Enochian common stock outstanding as of May 31, 2022.[47] Additionally, there are at least 50 institutional investors who reported Enochian holdings during the class period.[48] Therefore, the numerosity requirement is satisfied.

---

[47]    Motion 22:3-19.

[48]    *Id.*

### 3.    Commonality

"[C]ommonality requires that the Class Members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'"  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350).  To satisfy Rule 23(a), common questions must be "'central to the validity' of the claims and capable of being resolved 'in one stroke.'"  *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1258 (9th Cir. 2024).

Here, there are numerous questions common to the class members' claims.  Those questions relate to important issues such as (1) whether Defendants made false or misleading representations in violation of the Exchange Act; (2) whether those misrepresentations were material; (3) whether Defendants acted with scienter; and (4) whether the price of Enochian stock was artificially inflated because of Defendants' alleged misrepresentations.  Those questions satisfy the commonality requirement.  *See In re Cooper Cos. Inc. Securities Litig.*, 254 F.R.D. 628, 635 (C.D. Cal. 2009).

### 4.    Typicality

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(3)).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  The Rule 23(a) standard is "permissive," and it requires only that the representative's claims are

"'reasonably co-extensive with those of absent Class Members.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).

Here, the named Plaintiffs' claims are typical of the class claims. Lead Plaintiff Murray, like the other class members, alleges that he purchased Enochian common stock at artificially inflated prices due to Defendants' material misstatements and omissions.[49] He further alleges that he suffered damages when the truth about Gumrukcu emerged.[50] Those claims are the same as those asserted by the class members.

### 5. Adequacy

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is "adequate" where counsel for the class is qualified and competent, the representatives' interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive. *See O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 335 (C.D. Cal. 1998) (citing *In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir.), *as amended* (July 15, 1982)).

As discussed above, the Court finds that Class Counsel have adequately represented the interests of the class.

### 6. Predominance and Superiority

To certify a damages class under Rule 23(b)(3), the court must conclude that common questions predominate over individual questions. *See Black Lives Matter*, 113 F.3d at 1258. The court must also conclude that the class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3).

---

[49]    *See generally* Amended Complaint.

[50]    *See generally id.*

Here, common questions will "'predominate over any questions affecting only individual members'" because most of the material issues in this case can be resolved on a class-wide basis. *See Amchem Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 468 (2013). For example, issues involving the alleged misrepresentations, scienter, and inflated stock prices are all class-wide and, thus, appropriate for class-wide resolution. Because those questions are central to the claims—and, indeed, among the most important questions in this case—common questions predominate over individual ones. *See id.*

Furthermore, because important common questions predominate over individualized issues, and because the class is so numerous that resolution through another means is impracticable and inefficient, the superiority requirement is also satisfied. *See id.* at 460–61.

### 7. Notice Requirements Under Rule 23(c)(2)(B)

"For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and quotation omitted).

The notice plan included in the Stipulation of Settlement satisfies those requirements. The Proposed Notice describes the allegations and claims in plain language, it defines the class upfront, and it describes the time and manner for requesting an exclusion.[51] The Proposed Notice also informs class members that they will be bound by the release of claims, and it describes options available to the class members, including the process for obtaining Proof of Claim forms.[52] The Court also anticipates that the Proposed Notice will inform class members about their ability to participate in the final settlement approval hearing.

Accordingly, the Court finds that all the relevant requirements for preliminary class certification have been satisfied.

### III.  DISPOSITION

For the foregoing reasons, the Court **GRANTS** the Motion [ECF No. 106] and orders as follows:

1. The Stipulation of Settlement is **PRELIMINARILY APPROVED**.

2. The following class is **CERTIFIED** for settlement purposes only: all persons and entities who purchased or otherwise acquired Enochian common stock between January 17, 2018, and June 27, 2022, both dates inclusive, and who were damaged thereby.

---

[51]    *See* Proposed Notice; *see also* Long-Form Notice & Summary Notice.

[52]    *Id.*

Excluded from the Settlement Class are (1) Defendants and any affiliates or subsidiaries thereof; (2) present and former officers and directors of Enochian, and their immediate family members . . . ; (3) any entity in which any defendant has or has had a controlling interest; (4) Serhat Gumrukcu, Anderson Wittekind, and any companies or entities currently or previously controlled by Serhat Gumrukcu and/or Anderson Wittekind, either individually or jointly; and (5) the legal representatives, heirs, estates, agents, successors, or assigns of any person or entity described in the preceding four categories.  Also excluded from the Settlement Class are any Settlement Class Members that validly and timely request exclusion in accordance with the requirements set by the Court in the Notice of Pendency and Proposed Settlement of Class Action.

3. Attorneys Joseph A Fonti and George N. Bauer of Bleichmar Fonti & Auld LLP are **APPOINTED** to serve as Lead Counsel on behalf of the settlement class for the purpose of settlement only.

4. Plaintiff Jean-Pierre Murray is **APPOINTED** as the representative of the settlement class for purpose of settlement only.

5. Epiq is **APPOINTED** as settlement administrator.

6. The distribution of class notice to the settlement class members is **AUTHORIZED**, pursuant to the Notice Plan.

7. The parties are **DIRECTED** to appear before this Court for a final approval hearing on November 25, 2025, at 9:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.

8.     Murray's Request for Status Conference [ECF No. 113] is **DENIED as moot**.

**IT IS SO ORDERED.**

Dated:  August 18, 2025

John W. Holcomb
UNITED STATES DISTRICT JUDGE

-21-