**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
George N. Bauer (*pro hac vice*)
300 Park Avenue, Suite 1301
New York, New York 10022
jfonti@bfalaw.com
gbauer@bfalaw.com
Tel: (212) 789-1340
Fax: (212) 205-3960

*Counsel for Lead Plaintiff Jean-Pierre Murray,*
*and Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CHOW, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ENOCHIAN BIOSCIENCES INC., MARK DYBUL, RENE SINDLEV, and CARL SANDLER,<br><br>Defendants. | Case No. 8:22-cv-01374-JWH-JDE<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>JUDGE:  Hon. John W. Holcomb<br>DATE:  November 25, 2025<br>TIME:  9:00 a.m.<br>COURTROOM:  9D – 9th Floor |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION ......................................................................1

STATEMENT OF THE ISSUES TO BE DECIDED ...............................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

I.     PRELIMINARY STATEMENT ......................................................................2

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT .......................3

III.   THE SETTLEMENT WARRANTS APPROVAL .........................................5

    1.    Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(e)(2)(A) and *Hanlon* Factor 6 ..............................6

    2.    The Settlement Is Presumptively Fair, Reasonable, and Adequate Because It Is the Product of Arm's-Length Negotiations – Rule 23(e)(2)(B) ........................................................................7

    3.    The Proposed Settlement Provides Adequate Relief – Rule 23(e)(2)(C) and *Hanlon* Factors 1, 2, 3, and 4 .....................................8

    4.    The Settlement Treats Class Members Equitably – Rule 23(e)(2)(D) ..................................................................................13

    5.    The Remaining *Hanlon* Factors Support Final Approval ..................13

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ..............................................................................................15

V.     THE NOTICE OF THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS REQUIREMENTS ...................................................17

VI.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED ...............................................................................................19

VII.   CONCLUSION..............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brightk Consulting Inc. v. BMW of N. Am., LLC*,
   2023 WL 2347446 (C.D. Cal. Jan. 3, 2023)......................................................8

*Ching v. Siemens Indus., Inc.*,
   2013 WL 6200190 (N.D. Cal. Nov. 27, 2013).................................................17

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................14

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 5, 15

*Cruz v. Sky Chefs, Inc.*,
   2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ...............................................14

*Farrar v. Workhorse Grp., Inc.*,
   2023 WL 5505981 (C.D. Cal. July 24, 2023) ........................................... 8, 10

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) .........................................................................5

*Gudimetla v. Ambow Educ. Holding*,
   2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) .............................................11

*Guidano Napoli v. Ampio Pharm., Inc. et al.*,
   No. 2:15-CV-03474-TJH-PJW, ECF No. 97 (C.D. Cal. Sep. 29, 2017) ..............9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................ 6, 11, 13, 14

*Hill v. Canidae Corp.*,
   2021 WL 4988032 (C.D. Cal. Apr. 2, 2021)....................................................8

*In re Biolase, Inc. Sec. Litig.*,
   2015 WL 12697736 (C.D. Cal. June 5, 2015)................................................14

*In re Broadcom Corp. Sec. Litig.*,
   2005 WL 8153007 (C.D. Cal. Sep. 14, 2005)..................................................9

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

ii

*In re HealthSouth Corp. Sec. Litig.*,
    334 F. App'x 248 (11th Cir. 2009)........................................................................12

*In re LJ Int'l, Inc. Sec. Litig.*,
    2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ................................................. 9, 11

*In re Merit Medical Sys., Inc., Sec. Litig.*,
    ECF No. 117 (C.D. Cal. Apr. 15, 2022)................................................................17

*James Rose v. Deer Consumer Prod., Inc. et al*,
    No. 2:11-CV-03701-DMG, ECF Nos. 107, 100 (C.D. Cal. Aug. 9, 2013) ...........9

*Jiangchen v. Rentech*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ................................................. 16, 17

*Johnson v. General Mills, Inc.*,
    2013 WL 3213832 (C.D. Cal. June 17, 2013)........................................................5

*Karl v. Zimmer Biomet Holdings, Inc.*,
    2022 WL 658970 (N.D. Cal. Mar. 4, 2022) .........................................................15

*Low v. Trump University, LLC*,
    881 F.3d 1111 (9th Cir. 2018) ..............................................................................17

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................6

*Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014)........................................................15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................ 8, 15

**STATUTES**

15 U.S.C. § 78u-4(f)(2)....................................................................................................11

**RULES**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on November 25, 2025, at 9:00 a.m. PST, or as soon thereafter as this matter may be heard, Lead Plaintiff Jean-Pierre Murray, on behalf of himself and the Settlement Class, by and through Lead Counsel, will and hereby does, respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23, in the above-captioned action (the "Litigation") for an entry of: (1) the proposed Final Judgment certifying the Settlement Class and granting final approval of the proposed settlement of this Litigation (the "Settlement") (proposed Final Judgment previously submitted at ECF No. 106-8), and (2) an order granting approval of the proposed Plan of Allocation, submitted herewith.[1]

This Motion is based on the Memorandum of Points and Authorities below, the Declaration of George N. Bauer ("Bauer Declaration" or "Bauer Decl.") and the exhibits thereto, including the Declaration of Lead Plaintiff Jean-Pierre Murray (Bauer Decl., Ex. A), the Declaration of Morgan Kimball ("Kimball Decl.") (Bauer Decl., Ex. E), the Declaration of Jed Melnick of JAMS ("Melnick Decl.") (Bauer Decl., Ex. H), the Stipulation of Settlement and exhibits thereto (ECF No. 106-2),[2] all other prior pleadings and papers in this Litigation, arguments of counsel, and such additional information or argument as may be requested by the Court.

Given the October 23, 2025 deadline for exclusions, Lead Plaintiff will submit an updated proposed Final Judgment (previously submitted at ECF No. 106-8),

---

[1] Capitalized terms shall have the same meaning as set forth in the Stipulation of Settlement dated November 8, 2024 (the "Stipulation") (ECF No. 106-2). Unless otherwise noted, all emphasis is added and all internal citations and quotation marks are omitted. As indicated in Plaintiff's preliminary approval motion, Defendant Enochian changed its name to Renovaro Biosciences, Inc. in August 2023. (ECF No. 106, at n.4.) On August 20, 2025, Enochian changed its name again to Lunai Bioworks, Inc. For continuity, Plaintiff will continue to refer to Enochian.

[2] The attachments to the Stipulation include: the Proposed Order Preliminarily Approving Settlement and Providing for Class Notice (Exhibit A); the proposed Notice (Exhibit A-1); the proposed Long-Form Notice (Exhibit A-2); the proposed Proof of Claim (Exhibit A-3); the proposed Summary Notice (Exhibit A-4); and the proposed Judgment (Exhibit B).

listing any exclusions from the Settlement Class, with Lead Plaintiff's reply submission.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided on this Motion are:

1.     Whether the Court should grant final approval of the Settlement as fair, reasonable, and adequate under Rule 23(e)(2); and

2.     Whether the Court should approve the Plan of Allocation as fair, reasonable, and adequate.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

Lead Plaintiff respectfully requests that the Court grant final approval of the $2,500,000 Settlement in this Action.  In granting preliminary approval, this Court reviewed the Settlement and found that it was "fair, reasonable, and adequate" under Rule 23(e)(2).  (ECF No. 114 (the "Preliminary Approval Order").)

The factors that led the Court to grant preliminary approval remain unchanged.  The Settlement recovers more than 5% of the estimated maximum damages (as calculated by Plaintiff's expert).  That result compares favorably to other settlements in this District and Circuit (as discussed below) and is particularly favorable in view of Enochian's precarious financial position.  At the time the Settlement was reached, Enochian had only $220,571 in cash.  Currently, Enochian's cash position has fallen to $92,700.[3]  The Settlement is also favorable in light of the risks of continued litigation, in particular as to scienter.

The Court should also approve the Plan of Allocation, which, in consultation with an industry-leading expert, was designed to fairly and equitably distribute the

---

[3] Lunai Bioworks, Inc. Form 10-K for the fiscal year ended June 30, 2025, at F-4, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001527728/fc14ce51-90a1-4a10-aef3-0d4a2245f1b6.pdf.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

2

Net Settlement Fund to Settlement Class Members on a *pro rata* basis using standard methodologies.

Events since preliminary approval further confirm that the Court should grant final approval of the Settlement and Plan of Allocation. The notice program has effectively distributed notice to the Class. The Court-appointed claims administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), has disseminated 33,796 Notices as of October 20, 2025. After this broad dissemination of notice, no Settlement Class Members have objected to any aspect of the Settlement or Plan of Allocation (or the requested fee and expense reimbursement), and only four purported requests for exclusion have been received.[4]

In sum, the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and satisfy the standards of Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Court should grant final approval of the Settlement and approve the Plan of Allocation so Settlement Class Members can promptly receive compensation.

## II. SUMMARY OF THE LITIGATION AND SETTLEMENT

Lead Plaintiff's prosecution and settlement of the Litigation is detailed in the Bauer Declaration (¶¶4-26) and the preliminary approval motion (ECF No. 106 at 9-11).

In summary, the Settlement is the culmination of hard-fought litigation that began in mid-2022. By the time of the Settlement, more than two years later, Lead Plaintiff and Lead Counsel had, among other things, (i) conducted an extensive investigation that included interviews with confidential witnesses; (ii) conducted a comprehensive analysis of publicly available information such as SEC filings, news articles, industry publications, analyst reports, academic literature, and filings in

---

[4] As indicated below, the requests were unaccompanied by supporting documentation. Thus, Epiq has not been able to verify whether the requesters are actually Settlement Class Members or how many damaged shares, if any, they held. Epiq is working to obtain this information.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

3

other litigation; (iii) retained experts to assess loss causation and damages; (iv) drafted and filed a 149-paragraph amended complaint; (v) briefed, argued, and defeated Defendants' motion to dismiss in its entirety; and (vi) aggressively negotiated the terms of the Settlement, including a full day mediation under the auspices of Jed Melnick of JAMS, and numerous further teleconferences with Mr. Melnick.

The mediation took place after the Court's ruling denying Defendants' motion to dismiss, when the Court inquired about "the prospects of settlement" and asked, "[W]hat can the Court do to help the parties move to a resolution?" (ECF No. 93 at 54:3–11.) This effort led to Mr. Melnick's mediator's recommendation to resolve the matter for $2.5 million in cash. The parties accepted the mediator's recommendation, then negotiated a term sheet and the Stipulation setting forth the terms of the proposed Settlement.

The Settlement Amount of $2.5 million in cash has been deposited into interest-bearing escrow accounts (*see* Stipulation ¶ 2.3). The Net Settlement Fund (*i.e.*, the Settlement Amount, plus accrued interest, minus Notice and Administration Costs, Taxes and Tax Expenses, and any Court-approved attorneys' fees, expenses, awards, or other Court-approved deductions) will then be distributed to Settlement Class Members who submit valid Proof of Claim forms ("Authorized Claimants") in accordance with a plan of allocation to be approved by the Court.

The Settlement Amount was paid in exchange for a mutual release of claims. Among other things, the claims to be released in the Settlement include the claims asserted in the Amended Complaint, and all claims that concern, arise out of, refer to, are based upon, or are related in any manner to the allegations in the Litigation. (*See* Stipulation ¶ 1.20.)

On August 18, 2025, the Court granted preliminary approval of the Settlement. (ECF No. 114.) The Court noted that the Settlement was "the product of arm's-length negotiation," and that the $2.5 million Settlement was "favorable to

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-cv-01374-JWH-JDE

4

the class because there are significant risks associated with proceeding with litigation in this case," including that "Defendants' financial position is unstable, because they no longer have any meaningful commercial product or revenue source." (ECF No. 114 at 9-10.)  The Court also observed that Enochian's warning that it may be required to "seek bankruptcy protection or other alternatives" would "significantly harm Plaintiffs' ability to pursue their claims."  (ECF No. 114 at 10-11.)

Since preliminary approval, Epiq has implemented the Court-approved notice program, as detailed further below, including disseminating 33,796 Notices; establishing the settlement website; and publishing the Summary Notice. (*Infra* Sec. V.)

## III.  THE SETTLEMENT WARRANTS APPROVAL

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Johnson v. General Mills, Inc.*, 2013 WL 3213832, at *2 (C.D. Cal. June 17, 2013) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) (noting the policy of the federal courts is to encourage settlement before trial).

Under Rule 23(e)(2), as amended in 2018, to approve a class-action settlement, the Court must determine that it is "fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

5

required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Courts in the Ninth Circuit also evaluate the so-called "*Hanlon* factors" which significantly overlap with Rule 23(e) and include "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; [and] [8] and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 1. Lead Counsel and Lead Plaintiff Have Adequately Represented the Class – Rule 23(e)(2)(A) and *Hanlon* Factor 6

To satisfy Rule 23(e)(2)(A)'s adequacy requirement, courts must resolve two questions: "(1) do[es] the named plaintiff[] and [its] counsel have any conflicts of interest with other class members and (2) will the named plaintiff[]and [its] counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. That standard is easily met here.

*First*, there are no conflicts of interest between Lead Plaintiff and Lead Counsel and the rest of the Settlement Class. The Preliminary Approval Order recognized that Lead Plaintiff's claims are typical of the Settlement Class's claims. (ECF No. 114 at 17.) Additionally, Lead Plaintiff and other Settlement Class Members share an interest in securing the largest possible recovery. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the [s]ettlement [c]lass, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the [s]ettlement [c]lass members.").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

6

*Second*, Lead Plaintiff and Lead Counsel have vigorously prosecuted this action since appointment two years ago.  This includes, among other things, conducting an in-depth investigation, interviewing former Enochian employees, scouring a detailed public record, including news reports and litigation records, retaining experts to assess loss causation and damages, drafting an amended complaint, briefing, arguing, and ultimately defeating Defendants' motion to dismiss in its entirety, and aggressively negotiating the terms of the Settlement.  The Court's Preliminary Approval Order concurred that Lead Counsel "has adequately prosecuted this action and represented the interests of the class members."  (ECF No. 114 at 9.)

Lead Plaintiff has also protected the Class's interests by retaining and overseeing qualified and experienced Lead Counsel.  BFA is highly experienced in litigating securities class actions and other shareholder rights cases, and has prosecuted and successfully resolved numerous cases, including: a $919 million derivative recovery in *The Police and Fire Retirement System of the City of Detroit v. Elon Musk, et al.*, C.A. No. 2020-0477-KSJ (Del. Ch.); a $420 million recovery in *In re Teva Sec. Litig.*, No. 17-cv-0558 (D. Conn.); a $234 million recovery in *In re MF Global Holdings Sec. Litig.*, No. 11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Fin. Inc. Sec. Litig.*, 14-cv-00682-JAG (E.D. Va.); a $129 million recovery in *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 19-cv-04744 (N.D. Cal.); and a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121-LAK (S.D.N.Y.).  (Bauer Decl., Ex. D, BFA Firm Resume.)

### 2.    The Settlement Is Presumptively Fair, Reasonable, and Adequate Because It Is the Product of Arm's-Length Negotiations – Rule 23(e)(2)(B)

In approving a class action settlement, the Ninth Circuit, and courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-cv-01374-JWH-JDE

7

2009).   Courts have recognized that "[t]he use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive." *See Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021).   That is true here.

In fact, the Preliminary Approval Order recognized that the settlement was "the product of a full-day mediation session with an experienced JAMS mediator, who recommended that the parties accept the Stipulation of Settlement," which "support[s] a finding that the settlement is the product of arm's-length negotiation." (ECF No. 114 at 9.).   That full-day mediation, and further negotiations, were conducted under the auspices of Jed Melnick, a preeminent mediator with extensive experience in complex business litigation and, in particular, securities class actions. The Parties' mediation efforts included the submission of confidential mediation statements and a full-day mediation session, followed by numerous further teleconferences with Mr. Melnick over the following weeks.   (Bauer Decl., Ex.  H (Melnick Decl.) ¶¶5-7.)

These extensive arm's-length negotiations—resulting in a mediator's recommendation to resolve the litigation—confirm that the proposed settlement is the product of serious, informed, non-collusive negotiations.   *See Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *5 (C.D. Cal. July 24, 2023) ("Negotiations began in person before a neutral private mediator [Jed Melnick] who is 'an experienced complex business litigation mediator who has resolved over 1,000 disputes in his career.'") (quoting *Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 WL 2347446, at *6 (C.D. Cal. Jan. 3, 2023)).

### 3.    The Proposed Settlement Provides Adequate Relief – Rule 23(e)(2)(C) and *Hanlon* Factors 1, 2, 3, and 4

Rule  23(e)(2)(C) provides that the adequacy of relief should be assessed "taking into account:   (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-cv-01374-JWH-JDE

8

method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." These factors support final approval here.

The non-reversionary, all-cash $2.5 million Settlement Amount represents 5.3% of Plaintiff's estimated recoverable damages of $47 million. This compares favorably to securities class action settlements in this District, even before considering Enochian's precarious financial condition. *See, e.g.*, *Guidano Napoli v. Ampio Pharm., Inc., et al.*, No. 2:15-CV-03474-TJH-PJW, ECF No. 97 (C.D. Cal. Sep. 29, 2017) and ECF 87 at 11 (granting final approval of $3.4 million settlement, constituting 5.36% of estimated $63.4 million damages); *James Rose v. Deer Consumer Prod., Inc., et al*, No. 2:11-CV-03701-DMG, ECF No. 107 (C.D. Cal. Aug. 9, 2013) and ECF No. 100 at 5 (granting final approval of $2.125 million settlement, constituting 4% of estimated $52.6 million damages); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4–5 (C.D. Cal. Oct. 19, 2009) (approving settlement with recovery of 4.5% of maximum damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sep. 14, 2005) ("In any event, even a 2.7 cent recovery for every dollar of claimed damages would not be inconsistent with the average recovery in securities class action cases.").

### a. The Costs, Risks, and Delay of Trial and Appeal

While Lead Plaintiff and Lead Counsel believe that the claims asserted on behalf of the Settlement Class have merit, continued litigation raises serious risks.

Most importantly, and as the Court recognized in its Preliminary Approval Order, Defendants' precarious financial condition posed an almost existential risk to further litigation. (ECF No. 114 at 10-11.) With no commercial product and no meaningful revenue source, Enochian's cash position rapidly diminished during the course of the Litigation. By March 31, 2024, Enochian's cash and cash equivalents had diminished to $312,697, a figure that dropped to $220,571 by the time of the

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE No. 8:22-CV-01374-JWH-JDE

9

Settlement in November 2024.[5]    Since then, Enochian's cash reserves have diminished even further to a cash position totaling $92,700, as reported in Enochian's Form 10-K filed on September 29, 2025.[6] Enochian's financial position was so risky that shortly before the Settlement, Enochian warned in its Form 10-K, "If we do not have sufficient funds to continue operations, we could be required to seek bankruptcy protection or other alternatives that could result in our stockholders losing some or all of their investment in us."[7]

Further inquiries during the negotiation of the Settlement did not reveal additional assets available to satisfy a judgment.  In fact, Lead Plaintiff, through Lead Counsel, negotiated a condition of the Settlement that required Defendants to provide to Lead Plaintiff sworn documentation, submitted under the penalty of perjury, confirming certain representations their counsel made during the negotiation of the Settlement concerning Defendants' ability to fund a settlement.  (*See* Stipulation ¶2.2.)

Lead Plaintiff and the putative class faced risks on the merits as well. Defendants vigorously denied scienter, and at the motion to dismiss hearing the Court described this case as "a close one."  Litigating the scienter issue would have further depleted Enochian's limited cash reserves as "[n]umerous depositions and document and other written discovery would be required if the case continued"— including potential depositions of Serhat Gumrukcu in prison—and "[e]xtensive and expensive expert discovery would also be necessary." *Farrar*, 2023 WL 5505981, at *7.  Additionally, "there would be significant costs and risks associated with class

---

[5] Enochian Form 10-Q for the quarterly period ended March 31, 2024, at 2, 7, 11, 46, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001527728/0cb607ef-695e-4a01-9277-eef139869e37.pdf; Enochian Form 10-Q for the quarterly period ended Sept 30, 2024, at 6, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001527728/feff0e70-26d2-482f-bb8f-a58d23775b4f.pdf .

[6] Enochian Form 10-K for the fiscal year ended June 30, 2025, at 61, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001527728/fc14ce51-90a1-4a10-aef3-0d4a2245f1b6.pdf.

[7] *Id.* at 11.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-cv-01374-JWH-JDE

10

certification, summary judgment, and trial." *Id*.   Further, had the Litigation proceeded to trial, the Class faced an additional risk from the PSLRA's proportionate liability provision, which states that defendants may be "liable solely for the portion of the judgment" corresponding to the percentage of responsibility a jury assigns to each defendant. 15 U.S.C. § 78u-4(f)(2)(B)(i).  This posed the risk that a jury could assign most or all fault to a defendant with limited assets from which to recover a judgment.

In short, Enochian's financial condition and the real prospect of a near-term bankruptcy materially heightened the inherent complexity and risk of further litigation.   Courts in this District routinely find that the amount offered in settlement—a *Hanlon* factor that overlaps with Rule 23(e)(2)(c)—weighs in favor of approval for comparable settlement amounts given "risks inherent in [the] litigation and [Defendant's] financial situation." *Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving securities fraud class action settlement where recovery of $1.5 million was 5.6% of $26.7 million in estimated damages where there were very serious ability to pay and collectability issues); *see also LJ Int'l*, 2009 WL 10669955, at *4 (approving securities fraud class action settlement where $2 million recovery was 4.5% of $44 million maximum possible recovery).

### b.   The Proposed Method for Distributing Relief Is Effective

As demonstrated below and in the supporting Declaration of Morgan Kimball, the proposed method to distribute relief to the Settlement Class is effective, satisfying Rule 23(e)(2)(C)(ii).  As discussed more fully below, Epiq has effectively and efficiently distributed the Notice to Class Members as required by Rule 23 and due process.  (*See infra*, Sec. V.)  And the Plan of Allocation fairly distributes the Net Settlement Fund to Settlement Class Members on an equitable, *pro rata* basis determined by share prices at the time of purchase and sale.  This is consistent with

the standard procedures for securities class settlements that, as the Court noted in its Preliminary Approval Order, courts routinely approve.  (*See infra*, Sec. IV.)

### c.  The Terms and Timing of Payment of Attorneys' Fees and Expenses Are Reasonable

The relief is also adequate given the reasonable request for attorneys' fees and litigation expenses under Fed. R. Civ. P. 23(e)(2)(C)(iii).  The Notice issued to potential Settlement Class Members indicated that Lead Plaintiff's Counsel would seek fees not to exceed 30% of the Settlement Amount, and expenses not to exceed $300,000, plus interest for both elements at the same rate earned by the Settlement Fund. (ECF No. 106-4, at 2.)  The actual requests are considerably lower: 27.5% of the Settlement Amount in fees, and approximately $175,000 in litigation expenses. To date, no potential Settlement Class Members have objected to these disclosures. The request for fees and litigation expenses is discussed in more detail in Lead Plaintiff's Counsel's separate Motion for Attorneys' Fees and Litigation Expenses.

### d.  Lead Plaintiff Has Identified All Agreements Made in Connection with the Proposed Settlement

In addition to the Stipulation, the parties have entered into a confidential Supplemental Agreement providing specified options to terminate the settlement if Persons who otherwise would be Members of the Settlement Class, and timely choose to exclude themselves, purchased more than a certain number of shares of Enochian common stock during the Class Period.  (Stipulation ¶7.7.)  As is standard in securities class action settlements, such agreements are not made public to avoid incentivizing individual class members to leverage the opt-out threshold to seek disproportionate individual settlements at the expense of the broader class.[8]

---

[8] *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

12

Pursuant to its terms, the Supplemental Agreement may be submitted to the Court for *in camera* review.

### 4. The Settlement Treats Class Members Equitably – Rule 23(e)(2)(D)

The Settlement "treats class members equitably relative to each other," as required by Rule 23(e)(2)(D). Specifically, the Plan of Allocation, which was prepared with expert assistance, allocates each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses in transactions in Enochian common stock. (*See infra*, Sec. IV.) The Court, in its Preliminary Approval Order, observed that the Settlement "treats class members equitably relative to each other because it provides that class members will receive *pro rata* shares of the Settlement Fund based upon their recognized losses." (ECF No. 114 at 13.)

### 5. The Remaining *Hanlon* Factors Support Final Approval

Lead Counsel is a highly qualified law firm experienced in prosecuting securities class actions. (Bauer Decl. ¶3, Ex. D (BFA Firm Resume).) The Court's Preliminary Approval Order found that, "Class Counsel are highly experienced, and they have performed competently throughout the course of this litigation, including by defeating Defendants' motion to dismiss." (ECF No. 114 at 8-9.) In further support of this finding, the Court noted that, by negotiating a condition requiring Defendants to provide sworn documentation confirming representations made during settlement negotiation, and by reserving certain rights if those representations prove false, "Class Counsel has adequately prosecuted this action and represented the interests of the class members." (ECF No. 114 at 9.) After extensively litigating this action for over two years, Lead Counsel supports the settlement. Thus, the sixth *Hanlon* factor—the experience and views of counsel—points in favor of final approval. *Hanlon*, 150 F.3d at 1026.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

13

The eighth *Hanlon* factor, "the reaction of the class members to the proposed settlement," also strongly favors final approval. *Id.* Here, the reaction of the Class is overwhelmingly positive. To start, Lead Plaintiff Murray—who has been involved in the Litigation since the beginning—authorized the Settlement and fully supports final approval. (Bauer Decl., Ex. A ¶¶6-9.) In addition, Epiq has disseminated a total of 33,796 Notices to Class Members. (Kimball Decl. ¶11.) Notably, to date, not a single Settlement Class Member has objected to any aspect of the Settlement and only four purported requests for exclusion have been received.[9] (*Id.* ¶¶27, 29.) *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (noting that "only 45 of the approximately 90,000 notified class members objected to the settlement"); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.").

*Hanlon* factor 5 considers the extent of discovery completed and the stage of the proceedings. *Hanlon*, 150 F.3d at 1026. Courts in this District routinely approve settlements in cases "lack[ing] formal discovery" where "Lead Plaintiff possesses sufficient information to make an informed decision." *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12697736, at *7 (C.D. Cal. June 5, 2015) (preliminarily approving settlement where complaint and motion to dismiss briefing demonstrated "a deep familiarity with the relevant SEC filings, press releases, analyst reports, conference call transcripts, and news articles."). That is certainly the case here. Lead Plaintiff, through Lead Plaintiff's Counsel, conducted an extensive investigation that included, among other things, comprehensive analysis of the Company's SEC filings, its public statements, news articles, industry publications, analyst reports,

---

[9] As of October 20, 2025, none of the four requests for exclusion have been accompanied by supporting documentation reflecting shares of Enochian common stock purchased and/or sold during the Class Period, as required by the Long-Form Notice (ECF No. 106-5 at 17). Epiq is working to confirm that these are valid requests for exclusion from Settlement Class Members.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

14

academic literature, and filings in other litigation. Lead Plaintiff, through Lead Counsel, also consulted experts to calculate damages and other loss causation issues. And Lead Plaintiff, through Lead Plaintiff's Counsel, diligently investigated Defendants' ability to fund any judgment, including by retaining independent investigative agencies. (Bauer Decl. ¶¶9-11.)

In light of this, the Court, in its Preliminary Approval Order, found that Lead Plaintiff's Counsel and Lead Plaintiff "possessed information to make an informed decision regarding settlement," adding that "it is apparent from the filings made throughout the course of this litigation and from the Stipulation of Settlement that Class Counsel thoroughly investigated Defendants' conduct and financial position, including through consultation with experts." (ECF No. 114 at 12.) Accordingly, Lead Plaintiff was fully informed on the merits and risks of the litigation, and this factor further supports approval.

Finally, there was no government participant here, so that *Hanlon* factor is either "neutral," *Karl v. Zimmer Biomet Holdings, Inc.*, 2022 WL 658970, at *3 (N.D. Cal. Mar. 4, 2022), or favors settlement because the "class in this case does not have the benefit . . . of previous litigation between the defendants and the government" to draw from. *Rodriguez*, 563 F.3d at 966.

## IV. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

In addition to seeking final approval of the Settlement, Lead Plaintiff seeks final approval of the Plan of Allocation, as set forth in the Long-Form Notice. (Kimball Decl., Ex. 4 at 11.)

While approval of the Plan of Allocation is considered separately from the fairness of the Settlement, it is governed by the same legal standards: the plan must be fair, reasonable, and adequate. *City of Seattle*, 955 F.2d at 1284–85; *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

Lead Plaintiff's Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement
Case No. 8:22-cv-01374-JWH-JDE

15

The Plan of Allocation here easily meets that standard because it provides for a *pro rata* distribution of the Net Settlement Fund using standard methodologies routinely deployed in securities class action settlements.

Specifically, Lead Plaintiff's damages expert first calculated the estimated artificial inflation in the per share closing price of Enochian common stock as a result of Defendants' alleged misrepresentations and material omissions. (ECF No. 106-10 (Coffman Decl.), ¶4.)  To do so, he considered price changes in Enochian common stock on June 1, 2022 and June 27, 2022, following the alleged corrective disclosures, adjusting for price changes on each day that were attributable to market or industry forces or that would likely have been attributed to non-fraud-related confounding information released on the same days. *Id.* ¶¶5-7.  This is known as an "event study," a statistical technique relied upon by academics for over 50 years to establish a causal connection between new company-specific news and movements in the market price of Enochian common stock.  (*Id.* ¶ 6.)

After determining the artificial inflation per share, Lead Plaintiff's damages expert then used those results as an input into the standard, well-settled formula for assessing Settlement Class Members' individual damages: the "out-of-pocket" method.  *Id.* ¶9.  This method specifies that damages are equal to the artificial inflation per share at the time of purchase, less the artificial inflation per share at the time of sale.  *Id.*  Under this approach, only investors that suffered losses caused by the dissipation of artificial inflation are included in the estimation of damages.  *Id.*

In this way, as noted above, the Plan of Allocation, allocates each Authorized Claimant their *pro rata* share of the Net Settlement Fund based on their recognized losses in transactions in Enochian common stock.  *See Jiangchen v. Rentech*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *8 (C.D. Cal. Oct. 10, 2019) ("Each Class Member's allocation will therefore be proportionate to actual injury. The Court finds that the Plan of Allocation is 'fair, reasonable, and adequate.'").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

16

In addition, while the objection deadline is November 4, 2025, to date, after dissemination of 33,796 Notices, not one Class Member has objected to the Plan of Allocation (or any other aspect of the Settlement).

As such, the Plan of Allocation is fair, reasonable, and adequate, and comparable to plans approved in other securities class actions in this District. *See, e.g.*, *In re Merit Medical Sys., Inc., Sec. Litig.*, ECF No. 117 (C.D. Cal. Apr. 15, 2022) (approving plan of allocation); *Rentech*, 2019 WL 5173771, at *8 (same).

## V.    THE NOTICE OF THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23 states that a district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Specifically, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Low v. Trump University, LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018) ("The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness.").

The contents of the notice to the Settlement Class satisfy Rule 23, due process, and the PSLRA. The Notice and Long-Form Notice are written in plain language and apprise Settlement Class Members of the nature of the litigation, including the claims and issues involved; the definition of the Settlement Class; the terms of the proposed Settlement; that the Court will exclude any Settlement Class member who requests exclusion; the procedures and deadlines for exclusion requests and objections; and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B), among other disclosures. *See Ching v. Siemens Indus., Inc.*, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013). The Notice and Long-Form Notice also provide all of the information required under the PSLRA. (*See* ECF No. 106 at 18.)

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-cv-01374-JWH-JDE

17

The method of distributing notice also satisfies Rule 23 and due process. At Lead Plaintiff's Counsel's direction, immediately after the Court granted preliminary approval of the Settlement on August 18, 2025, Epiq began implementing the Court-approved notice program. Specifically, on September 8, 2025, Epiq began delivering Notices directly to potential Settlement Class Members in accordance with instructions in the Court's Preliminary Approval Order. (*See* Kimball Decl. ¶3.) To disseminate notice efficiently, Epiq utilized a list (the "Transfer List") from Enochian's securities transfer agent of all persons who purchased or otherwise acquired Enochian Common Stock between January 17, 2018, and June 27, 2022, both dates inclusive, as well as Epiq's proprietary list of U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners. (*Id.* ¶¶3-4.)

Epiq has also taken steps to provide notice to the vast majority of investors who hold their securities through a brokerage firm, bank, institution, or other third-party nominee ("Nominees"). These investors are beneficial purchasers whose securities are held in "street name" (i.e., the securities are purchased and held by one of the Nominees on behalf of the beneficial purchaser). (*Id.* ¶4.) Specifically, Epiq has sent copies of the Notice by first-class mail to entities included on a proprietary list of approximately 1,400 Nominees, including those listed on the Depository Trust Company Security Position Reports as well as the largest and most common broker firms, banks, and other institutions involving publicly-traded securities. (*Id.*) The institutions included in the Nominee Database represent a significant majority of the beneficial holders of the securities in most settlements involving publicly-traded companies. (*Id.*)

Epiq also caused the Notice and related materials to be published by the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS"), which enables participating banks and brokers to review these materials and directly

Lead Plaintiff's Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement
Case No. 8:22-cv-01374-JWH-JDE

18

contact Epiq to obtain copies for their clients who may be Settlement Class members. (*Id.* ¶13.)

In addition, Epiq activated the website for this Litigation (www.EnochianSecuritiesLitigation.com) on September 5, 2025. The website provides investors with complete access to the Notice, Long-Form Notice, Summary Notice, claim forms, and other documents, as well as information on the exclusion, objection, and claim filing deadlines, and instructions on how to submit claims. (*Id.* ¶¶14-18.)

On September 8, 2025, the Court-approved Summary Notice was published in *Investor's Business Daily* and released via *PR Newswire.* (*Id.* ¶12.)

The notice program has proven to be effective and efficient. Through October 20, 2025, Epiq has disseminated a total of 33,796 Notices to investors. (*Id.* ¶11.) And while the vast majority of claims are expected to be submitted on or around the December 7, 2025 claim filing deadline, Epiq has already received 97 claim submissions. (*Id.* ¶25.)

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. (ECF No. 114 at 19-20.) Nothing has occurred since then to cast doubt on the propriety of class certification, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Lead Plaintiff's unopposed motion for preliminary approval of the Settlement (ECF No. 106), Lead Plaintiff respectfully requests that the Court grant final certification of the Settlement Class under Rules 23(a) and (b)(3).

Lead Plaintiff's Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement
Case No. 8:22-cv-01374-JWH-JDE

19

## VII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: October 21, 2025

Respectfully submitted,

By: */s/ Joseph A. Fonti*

**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

George N. Bauer (*pro hac vice*)
gbauer@bfalaw.com
75 Virginia Road, 2nd Floor
New York, New York 10603
Tel: (212) 789-1340
Fax: (212) 205-3960

*Counsel for Lead Plaintiff Jean-Pierre Murray and Lead Counsel for the Putative Class*

– and –

Brian Schall (SBN 290685)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

20

*Additional Counsel for Lead Plaintiff*
*Jean-Pierre Murray*

Lead Plaintiff's Notice of Motion and Motion for Final Approval of Proposed Class Action Settlement
Case No. 8:22-cv-01374-JWH-JDE

21

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Lead Plaintiff and Lead Counsel, certifies that this brief contains 5,881 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 21, 2025

Respectfully submitted,

By: */s/ Joseph A. Fonti*
**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
jfonti@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Tel: (212) 789-1340
Fax: (212) 205-3960

– and –

George N. Bauer (*pro hac vice*)
gbauer@bfalaw.com
75 Virginia Road, 2nd Floor
New York, New York 10603
Tel: (212) 789-1340
Fax: (212) 205-3960

*Counsel for Lead Plaintiff Jean-Pierre Murray and Lead Counsel for the Putative Class*

– and –

Brian Schall (SBN 290685)
**THE SCHALL LAW FIRM**
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Jean-Pierre Murray*

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 8:22-CV-01374-JWH-JDE

22