**BLEICHMAR FONTI & AULD LLP**
Joseph A. Fonti (*pro hac vice*)
George N. Bauer (*pro hac vice*)
300 Park Avenue, Suite 1301
New York, New York 10022
jfonti@bfalaw.com
gbauer@bfalaw.com
Tel: (212) 789-1340
Fax: (212) 205-3960

*Counsel for Lead Plaintiff Jean-Pierre Murray,*
*and Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT CHOW, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENOCHIAN BIOSCIENCES INC., MARK DYBUL, RENE SINDLEV, and CARL SANDLER, <br><br> Defendants. | Case No. 8:22-cv-01374-JWH-JDE <br><br> CLASS ACTION <br><br> **DECLARATION OF GEORGE N. BAUER IN SUPPORT OF (1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, AND (2) LEAD PLAINTIFF'S COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD** <br><br> JUDGE:  Hon. John W. Holcomb <br> DATE:  November 25, 2025 <br> TIME:  9:00 a.m. <br> COURTROOM:  9D – 9th Floor |

DECL. OF GEORGE N. BAUER IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND LEAD PLAINTIFF'S COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD        Case No. 8:22-cv-01374-JWH-JDE

I, George N. Bauer, hereby declare as follows:[1]

1.      I am a Partner with the law firm Bleichmar Fonti & Auld LLP ("BFA"), counsel for Lead Plaintiff Jean-Pierre Murray ("Lead Plaintiff") and Lead Counsel for the Class.  I am an attorney duly licensed to practice in the State of New York and have been admitted to practice *pro hac vice* in this matter.  I have knowledge of the matters stated herein and, should I be called upon, I could and would competently testify thereto.

2.      I respectfully submit this declaration in support of (1) Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement, and (2) Lead Plaintiff's Counsel's Motion for Attorneys' Fees, Expenses, and Service Award.

3.      Attached hereto are true and correct copies of the following documents:

a.  **Exhibit A** – the Declaration of Jean-Pierre Murray in Support of (1) Lead Plaintiff's Motion for Final Approval of Proposed Class Action Settlement, and (2) Lead Plaintiff's Counsel's Motion for Attorneys' Fees, Expenses, and Service Award.

b.  **Exhibit B** – a list of BFA attorneys who worked on the case, as well as information about each individual's qualifications, experience, and role.

c.  **Exhibit C** – a schedule summarizing the amount of time spent by each BFA attorney from Lead Plaintiff's appointment on October 22, 2023 through the Order granting preliminary approval on August 18, 2025, the rates applicable to each individual, and a lodestar calculation for each individual.

d.  **Exhibit D** – BFA's firm resume.

e.  **Exhibit E** – the Declaration of Morgan Kimball of Epiq Class Action and Claims Solutions, Inc. ("Epiq") regarding: (I) Mailing of

---

[1] Capitalized terms not defined herein have the meanings stated in the Stipulation of Settlement, dated November 8, 2024 (the "Stipulation," ECF No. 106-2).  Unless otherwise stated, all emphasis is added and internal citations and quotations are omitted.

2

Notice; (II) Publication of Summary Notice; (III) the Settlement Website and Contact Center Services; (IV) Claim Filing; and (V) Requests for Exclusion and Objections Received to Date.

f. **Exhibit F** – a summary of BFA's expenses incurred in connection with Lead Plaintiff's prosecution of the Litigation.

g. **Exhibit G** – the Declaration of Jed Melnick of JAMS.

h. **Exhibit H** – the Declaration of Brian Schall of The Schall Law Firm.

## I. LEAD PLAINTIFF'S PROSECUTION OF THE ACTION

### A. Commencement of the Litigation and Appointment of Lead Plaintiff

4. The initial complaint in this Litigation was filed on July 26, 2022. (ECF No. 1.) The initial complaint alleged false and misleading statements concerning the background and credentials of Enochian's "Inventor and Co-Founder," Serhat Gumrukcu, the scientific and technological underpinnings of Enochian's product pipeline, and the commercial prospects of that product pipeline. (*Id.* ¶¶ 32-44.) The initial complaint further alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. (*Id.* ¶¶ 67-82.)

5. On September 26, 2022, Mr. Murray moved, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), for appointment as Lead Plaintiff and for the appointment of BFA as Lead Counsel. (ECF Nos. 45-47.) There were three other motions for Lead Plaintiff: Kyle Rankhorn (ECF Nos. 31-34); Amanda Hollingworth (ECF Nos. 35, 37-40); and Albert Chow (ECF Nos. 41-44).

6. On October 7, 2022, Kyle Rankhorn and Albert Chow filed Notices of Non-Opposition concerning Mr. Murray's motion, (ECF Nos. 49-50) and Amanda Hollingworth withdrew her motion for appointment, (ECF Nos. 51 & 52).

7. On October 22, 2023, the Court entered an order appointing Mr. Murray as Lead Plaintiff and BFA as Lead Counsel. (ECF No. 64.)

8. On November 7, 2023, the Court ordered that by December 15, 2023, Lead Plaintiff should file a consolidated complaint, and that by February 13, 2024, Defendants shall answer or move to dismiss the consolidated complaint. (ECF No. 67). On February 7, 2024, the Court granted an extension for Defendants to answer or move to dismiss the consolidated complaint by March 7, 2024. (ECF No. 70.)

**B.** **Amended Complaint and Motion to Dismiss Briefing**

9. Immediately after Mr. Murray was appointed Lead Plaintiff and BFA was appointed Lead Counsel, BFA, on behalf of Lead Plaintiff, commenced an extensive investigation for the purpose of preparing a consolidated amended class action complaint.

10. As part of that investigation, BFA analyzed Enochian's U.S. Securities and Exchange Commission ("SEC") filings and public statements, media reports, analyst reports, and historic stock price data. BFA, working with its investigators, also conducted an extensive search to locate former Enochian employees who might have relevant information pertaining to the claims in the Amended Complaint.

11. In addition to these investigative steps, Lead Plaintiff, through BFA, retained the services of two highly qualified experts to assist in the prosecution of the case and to serve as witnesses at trial (if necessary). Lead Plaintiff, through BFA, retained (a) a forensic accounting expert to assist in the evaluation of Enochian's financial statements; and (b) Chad Coffman, of Peregrine Economics LLC, to provide expert advice and analysis on damages and loss causation issues, and in connection with preparing the proposed Plan of Allocation.

12. On December 15, 2023, Lead Plaintiff filed an amended complaint. (ECF No. 68, the "Amended Complaint.") In the Amended Complaint, Lead Plaintiff alleged material misstatements and omissions about the background and credentials of Enochian's "Inventor and Co-Founder," Serhat Gumrukcu. Specifically, Lead Plaintiff alleged that Defendants misrepresented that Gumrukcu was a medical doctor and world-class researcher, and based the Company's entire business model on Gumrukcu's

4

purported HIV cure.  In reality, as Lead Plaintiff alleged, Gumrukcu was not a doctor, had no medical training, held no relevant degrees, and was a prolific criminal and fraudster.  Lead Plaintiff asserted claims against Defendants Enochian Biosciences, Inc., Enochian's Chief Executive Officer Mark Dybul, Enochian's Chairman of the Board Rene Sindlev, and former Enochian Director Carl Sandler, under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.

13.    On March 7, 2024, Defendants filed a motion to dismiss the Amended Complaint, (ECF Nos. 73-74), arguing that Plaintiff failed to plead an actionable Exchange Act claim because Plaintiff failed to plead a strong inference of scienter. Defendants also filed a request for judicial notice and incorporation by reference that sought admission of 26 exhibits in support of their motion to dismiss.  (ECF No. 75.)

14.    On May 17, 2024, Lead Plaintiff filed an opposition to Defendants' motion to dismiss.  (ECF No. 81.)  Plaintiff argued, among other things, that Plaintiff pleaded scienter because Defendants repeatedly touted Gumrukcu's background in the face of numerous contrary facts and warnings (including concerns raised by former senior executives who were then terminated), that Enochian's entire business revolved around Gumrukcu, and that Defendants were personally motivated to conceal Gumrukcu's past.

15.    Also on May 17, 2024, Lead Plaintiff opposed Defendants' request for judicial notice and incorporation by reference.  (ECF No. 82.)  Lead Plaintiff argued principally that Defendants' request sought to establish their own version of the facts to dispute the well-pled allegations in the Amended Complaint.

16.    On June 14, 2024, Defendants filed reply briefs in further support of their motion to dismiss and request for judicial notice and incorporate by reference. (ECF Nos. 88 & 89.)

17.    On June 28, 2024, the Court heard argument from Lead Plaintiff's Counsel and Defendants' counsel on Defendants' motion to dismiss.  (ECF No. 90.)  After hearing argument, the Court issued an Order denying Defendants' motion to dismiss the Amended Complaint.  (ECF No. 90.)  Specifically, the Court denied the motion

finding that Plaintiff "sufficiently alleged scienter." At the hearing, the Court also asked the Parties about "the prospects of settlement" and "what can the Court do to help the parties move to a resolution?"

## C.   Case Management

18.   On August 2, 2024 (ECF No. 95), the Parties filed a Joint Status Report suggesting a date for a scheduling conference. The Parties also notified the Court that they were exploring the possibility of an early mediation.

19.   On September 6, 2024, after Lead Plaintiff's Counsel met and conferred with Defendants' counsel as required by Fed. R. Civ. P. 26(f), the Parties filed a joint Rule 26(f) Report. (ECF No. 98.) Among other things, the Parties' joint report proposed a discovery plan and a proposed schedule for fact discovery, expert discovery, and other case events. The Parties also informed the Court that they had agreed on an independent mediator, Jed Melnick of JAMS, and had scheduled a formal mediation session for September 17, 2024.

## D.   Settlement Negotiations

20.   The Parties engaged in private mediation before Jed Melnick of JAMS. A full-day mediation session occurred on September 17, 2024. Before the session, the parties exchanged detailed mediation statements addressing issues of liability and the Enochian's precarious financial position. During the September 17 session, the Parties made presentations to Mr. Melnick on the strengths and weaknesses of the Parties' claims and defenses, as well as consideration of Enochian's financial condition and Defendants' insurance coverage. Mr. Melnick also engaged in separate discussions with counsel for Lead Plaintiff and Defendants. Throughout the mediation, the Parties exchanged multiple demands and counteroffers under Mr. Melnick's auspices, but were unable to independently reach a resolution. At the conclusion of the session, Mr. Melnick made a recommendation to settle the case for $2.5 million.

21.   Later on September 17, 2024, the Parties filed a Joint Status Report notifying the Court that they had commenced mediation before Mr. Melnick, and that

6

he had issued a mediator's recommendation, which the Parties were evaluating. (ECF No. 99.)

22. After conferring separately, the Parties accepted Mr. Melnick's recommendation, and advised the Court on September 27, 2024, of their agreement in principle. (ECF No. 101.) The Parties subsequently negotiated the terms of the Stipulation.

### E.   Preliminary Approval

23. On December 9, 2024, Lead Plaintiff, through BFA, moved for preliminary approval of the settlement. (ECF No. 106.) The Settlement requires a $2.5 million cash payment, which together with any interest gained and net of costs, taxes, and approved fees and expenses, will be distributed to Settlement Class Members who submit valid Proof of Claim forms in accordance with a plan of allocation to be approved by the Court. The parties also agreed to a mutual release of claims related to the conduct alleged in the case and claims related to the prosecution and defense of the case. (Stipulation ¶¶ 4.1-4.5, 5.7.)

24. On August 18, 2025, the Court (i) granted preliminary approval of the Settlement, (ii) preliminarily certified the Settlement Class as set forth in the Stipulation, (iii) approved the form and content of Notice, (iv) approved the retention of Epiq as Claims Administrator; and (v) set deadlines for issuing notice, moving for final approval, and submitting claims, objections, and requests for exclusion. (ECF No. 114, the "Preliminary Approval Order.")

### F.   Notice, Claims, and Settlement Fund Administration

25. On September 8, 2025, Epiq began mailing Notice to potential Settlement Class Members and posted the Notice and related documents to the Settlement-specific website. (Ex. E, ¶¶ 3-5.) On September 8, 2025, Epiq caused the Summary Notice to be published in *Investor's Business Daily* and *PR Newswire*. (Ex. E, ¶ 12.)

26. The deadline for Settlement Class Members to submit exclusions is October 23, 2025, and the deadline for Settlement Class Members to object to the

7

Settlement or any aspect of the Settlement is November 4, 2025. To date, only four purported requests for exclusion have been received. However, those requests were unaccompanied by supporting documentation concerning the requesters' Enochian holdings. Epiq is working to confirm that the requesters purchased or acquired Enochian common stock during the Settlement Class Period. In addition, neither Epiq nor BFA have received any objections to the Settlement, the Plan of Allocation, or any other aspect of the Settlement, including the Fee and Expense Applications. (Ex. E, ¶¶27, 29.)

## II.   LEAD PLAINTIFF'S COUNSEL'S FEE AND EXPENSE APPLICATION

27.   BFA seeks (i) an award of attorneys' fees of $687,500, or 27.5% of the Settlement Fund, plus interest at the same rate earned by the Settlement Fund (the "Fee Application"), and (ii) payment for litigation expenses that it incurred in connection with the prosecution of the Litigation from the Settlement Fund in the amount of $175,588, plus interest at the same rate earned by the Settlement Fund (the "Expense Application"). The Notice and Long-Form Notice informed Class Members that Settlement Class Counsel would seek fees up to 30% and reimbursement of expenses up to $300,000 plus interest. (ECF Nos. 106-4 at 2; 106-5 at 3-4.)

### A.   Fee Application

#### (1)   The Result Achieved

28.   The $2.5 million Settlement Amount represents 5.3% of Plaintiff's estimate of maximum recoverable damages of $47 million.

29.   This result is especially noteworthy given Enochian's material financial constraints, worsening financial condition, and resulting risk of a near-term Chapter 11 filing, which greatly diminished the prospect of any cash recovery meaningfully larger than the proposed Settlement, as detailed above. In particular, prior to the Settlement, Enochian had reported that it had a cash balance of $220,571. That reported cash balance has diminished even further to a cash position totaling $92,700. Enochian's diminishing cash reserves, coupled with the fact that further litigation would have only

8

DECL. OF GEORGE N. BAUER IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND LEAD PLAINTIFF'S COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD          Case No. 8:22-cv-01374-JWH-JDE

continued to deplete Enochian's remaining cash and insurance proceeds, presented a serious risk that the Class could not recover more than the $2.5 million achieved in the proposed Settlement.

30.    As noted above, Lead Plaintiff's Counsel litigated the case aggressively and the Settlement was reached only after many hours of hard-fought, arms-length negotiations.

### (2)    The Novelty and Difficulty of the Questions Presented by the Litigation and Counsel's Skills in Representing the Class

31.    The difficulties presented by this complex securities class action, and the skill required to successfully navigate them, favor approval of the requested fee award.

32.    This was a complex case on the merits that presented additional practical complications.  On the merits, Defendants vigorously denied scienter at the motion to dismiss stage, which is subject to heightened standards of proof under the PSLRA. Indeed, the Court deemed the case "a close one."  Litigating scienter, falsity, loss causation, and the other issues in the case through trial posed the additional risk of further depleting Enochian's limited cash reserves.  Such litigation would have required navigating complex accounting issues as well as understanding the nature of the purported HIV research that Defendants claimed Gumrukcu had developed.  Litigation would have also required numerous fact depositions that would have further depleted Defendants' resources, including a deposition of Gumrukcu, likely from prison.  Those risks would have only grown at the class certification, summary judgment, and trial stages.

33.    In the face of these risks, Lead Plaintiff's Counsel skillfully conducted a robust investigation, prepared a detailed complaint, briefed, argued, and defeated Defendants' motion to dismiss,  and negotiated a Settlement that achieved a significant recovery for the Settlement Class.  The Court commended the parties' "excellent briefing" and "argument" at the hearing on Defendants' motion to dismiss, stating, "I wish all lawyers were as skilled and prepared as you are."  (ECF No. 93 at 55:9-11.)

9

34. The pleadings, briefs and other papers in this action reflect Lead Plaintiff's Counsel's skill, experience, and investment of extensive work to develop the Amended Complaint's allegations. In short, Lead Plaintiff could not have secured this outstanding result without Lead Plaintiff's Counsel's skillful navigation of the difficult questions at issue in this Litigation.

### (3) The Risk of Nonpayment and Contingent Nature of Counsel's Fee

35. The requested fee award is also reasonable in light of the significant risks assumed by BFA in prosecuting this complex class action on a fully contingent basis.

36. BFA undertook the representation of the Settlement Class knowing that the Litigation could last for years, provided no guarantee of any compensation, and would require the substantial investment of time that would otherwise have been devoted to other cases. BFA also assumed the risk of advancing all costs and expenses necessary to successfully prosecute the Litigation with no guarantee of any reimbursement.

37. Here, as noted, successful prosecution of the Litigation faced the additional significant risk posed by Defendants' dwindling finances. That risk threatened to deny the Class entirely of any recovery that could have been secured after trial.

### (4) The Time and Labor Expended

38. Lead Plaintiff's Counsel devoted significant time and effort to the prosecution of this Litigation, which totaled 835.5 hours amounting to $773,534 worth of time and effort.

39. Of that total, BFA spent 783.5 hours with a total lodestar of $723,334. (*See* Exhibit C.) This included, among other things, investigating, drafting, and filing the Amended Complaint, which uncovered the facts that substantiated a strong inference of a complex fraud; successfully defeating the Defendants' motion to dismiss; and successfully leveraging the work performed throughout the litigation to secure, through

aggressive arms-length negotiations, an extremely favorable resolution for Settlement Class Members.

40.    Exhibit C is based on contemporaneous time records prepared and maintained by BFA in the ordinary course. As a partner responsible for supervising BFA's work on this case, I supervised the review of these time records to prepare this declaration. The purpose of this review was to confirm both the accuracy of the time entries and the necessity for, and reasonableness of, the time committed to the Litigation.

41.    As reflected in Exhibit C, the hourly rates for BFA attorneys and professional support staff range from $695 for an associate to $1,250 for a founding firm partner. Rates are current as of the date the Court granted Preliminary Approval. For attorneys and professional support staff who are no longer employed by BFA, the hourly rate used is the hourly rate for such employee in his or her final year of employment by BFA.

42.    BFA's rates are the usual and customary rates set by BFA for each individual. Different timekeepers within the same employment category (e.g., partner, associate) may have different rates depending on their respective years of experience, years at the firm, years in current position, relevant experience, relevant expertise, and/or rates of similarly situated individuals at BFA or at peer firms. BFA's rates are comparable to the rates set by peer firms for attorneys and staff of similar skill and experience.

43.    Courts across the country have consistently held that BFA's hourly rates are reasonable. *See Bilinsky v. Gatos Silver, Inc., et al.*, No. 1:22-cv-00453-PAB-KAS (D. Colo. Oct. 15, 2024); Settlement Approval Hearing Transcript, *In re Teva Sec. Litig.*, No. 3:17- cv-00558 (SRU) (D. Conn.) (June 2, 2022), 28-29 (granting fee request and accepting BFA's rates); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2022 WL 816473, at *9 (N.D. Cal. Mar. 17, 2022) ("This order accepts

[BFA's] claimed rates as generally tracking the going rate for those with the same levels of skill and experience in our geographic region.").

44.     BFA excluded from the lodestar calculations reflected in Exhibit C all time incurred prior to its appointment as Lead Counsel on October 22, 2023, all time incurred after Preliminary Approval was granted on August 18, 2025, all time incurred by timekeepers with fewer than 100 hours devoted to the matter, and any additional time that counsel determined was not material to the resolution achieved.

45.     Exhibit C demonstrates that Settlement Class Counsel undertook a concentrated and efficient allocation of staffing.  The nature of this staffing was undertaken to ensure that knowledge of key information was centralized among a small number of attorneys, that time was not wasted initiating new personnel, duplication of effort was minimized, and that the litigation team was highly coordinated in order to tackle the complex factual and legal issues with utmost efficiency, as detailed further below.

### (5)     The Experience, Reputation, and Ability of Counsel

46.     BFA partners have litigated dozens of securities actions that have contributed to the recovery of more than $11 billion for investors, including nearly $2 billion since the founding of the firm in 2014.  Securities class actions that BFA has prosecuted and successfully resolved include a $420 million recovery in *In re Teva Securities Litigation*, No. 3:17-cv-0558 (D. Conn.); a $234 million recovery in *In re MF Global Holdings Securities Litigation*, 11-cv-07866-VM (S.D.N.Y.); a $219 million recovery in *In re Genworth Financial Inc. Securities Litigation*, 14-cv-00682-JAG (E.D. Va.); a $129 million recovery in *Greene v. Granite Construction Inc.*, No. 19-cv-04744 (N.D. Cal.); a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv- 02121-LAK (S.D.N.Y.); a $32.5 million recovery in *In re Talis Biomedical Securities Litigation*, No. 22-cv-00105 (N.D. Cal.); and a $21 million recovery in *Bilinsky v. Gatos Silver, Inc., et al.*, No. 1:22-cv-00453-PAB-KAS (D. Colo.).

47.    BFA's attorneys, including those that prosecuted this Litigation, have also successfully resolved numerous derivative matters, including a $919 million recovery in *The Police and Fire Retirement System of the City of Detroit v. Elon Musk, et al.*, C.A. No. 2020-0477-KSJ (Del. Ch.).

48.    BFA also serves as lead counsel or co-lead-counsel in a number of pending securities class action lawsuits throughout the country, including *Lozada v. TaskUs, Inc.*, No. 22-cv-01479 (S.D.N.Y.) (settlement pending); *Peters v. Twist Bioscience Corp.*, No. 22-cv08168 (N.D. Cal.); *Lucid Alternative Fund, LP v. Five9, Inc.*, No. 24-cv-08725 (N.D. Cal.); *In re UiPath, Inc., Securities Litigation*, No. 1:24-cv-04702 (S.D.N.Y.); *Tiessen v. The Toronto-Dominion Bank*, No. 24-cv-8032 (S.D.N.Y.); *Nixon v. CVS Health Corp.*, No. 24-cv-05303 (S.D.N.Y.); and *In re ICON plc Sec. Litig.*, No. 25-cv-00763 (E.D.N.Y.).

**(6)    The Reaction of the Lead Plaintiff and Class Supports the Fee Application**

49.    As reflected in the attached Exhibit A, Lead Plaintiff authorized the acceptance of the mediator's proposal and supports approval of the proposed Settlement. (Exhibit A, ¶¶6-9.)

50.    Lead Plaintiff has also reviewed Lead Plaintiff's Counsel's Fee and Expense Applications, and supports both. (*Id.* ¶¶10-14.) This is consistent with Lead Plaintiff's retention agreement with counsel. (*Id.* ¶¶11.)

51.    In addition, to date, no Settlement Class members have objected to the Settlement, and only four Settlement Class members have sought exclusion from the Settlement, though, as noted above, those requests did not provide information about the requesters' holdings and Epiq is working to verify that information.

DECL. OF GEORGE N. BAUER IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND LEAD PLAINTIFF'S COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD      Case No. 8:22-cv-01374-JWH-JDE

**B.     Expense Application**

**(1)     BFA's Litigation Expenses**

52.     BFA respectfully requests $175,588 in litigation expenses that it incurred in the prosecution of the Litigation.  BFA incurred these expenses with full knowledge that it might not recover any of them if the Litigation was not successful.

53.     Given the fully contingent representation and the risks of litigation, BFA was incentivized to prosecute this Litigation as efficiently as possible without undermining its aggressive litigation strategy.  Notably, the requested amount of expenses is nearly $124,000 lower than the maximum amount of $300,000 estimated in the Notice that was disseminated to the Class. (*See* ECF No. 106-4.)  To date, no Settlement Class Member has objected to the maximum amount of expenses set forth in the Notice, confirming the reasonableness of the requested expenses.

54.     Attached as Exhibit F is a summary of BFA's expenses incurred in connection with Lead Plaintiff's prosecution of the Litigation.  Exhibit F identifies each category of expense and the amount incurred in each category.

55.     Exhibit F and this Declaration are based on information maintained contemporaneously and in the ordinary course by BFA, including without limitation receipts, invoices, expense vouchers, check records, and other similar documents. I have reviewed Exhibit F and believe it to be an accurate record of the expenses incurred by BFA related to this matter.

56.     I believe that the expenses set forth in Exhibit F are fair and reasonable and were necessary for the efficient and effective prosecution of the Litigation. I also believe that the expenses set forth in Exhibit F comply fully with BFA's firm policies governing expense reimbursement. As noted above, BFA has to date received no reimbursement for any of the expenses set forth in Exhibit F.

14

57.    The expenses set forth in Exhibit F consist primarily (but not exclusively) of the following costs and expenses:[2]

- Expert Fees: $94,711.58.  This category includes the fees for Peregrine and Lead Plaintiff's forensic accounting consulting expert, as discussed above.  (*See supra* ¶11.)

- Litigation Support Vendor Fees: $53,732.54.  This category includes a vendor who provided investigative services concerning former Enochian employees in connection with the Amended Complaint.

- Mediation Fees: $17,032.81. This category includes the fees borne by BFA to retain the services of Jed Melnick of JAMS to mediate the settlement of the Litigation.

- Service & Filing Fees: $2,016.00.  This category includes Court filing fees and fees for service of subpoenas and other court documents.

- Computer Research: $3,492.67.  This category includes vendors such as PACER and Thomson Reuters. These resources were used to obtain access to legal research, factual databases, and for cite-checking of briefs.

- Case-Related Travel: $3,687.60.  This category includes airfare, local transportation, lodging, and meals related to travel for case-related events, including court hearings.

**(2)    Lead Plaintiff's Request for an Award and Reimbursement of Expenses**

58.    Pursuant to 15 U.S.C. § 78u-4(a)(4), Lead Plaintiff Jean-Pierre Murray also seeks an award of costs and expenses directly related to his representation of the Settlement Class.

---

[2] As noted in Exhibit F, additional expenses were incurred for postage, mailing, local and out-of-town transportation, meals, and accommodations.

59.     As detailed in Lead Plaintiff's declaration, based on the time he devoted to the Litigation, Lead Plaintiff seeks an award of $7,500.  (Exhibit A, ¶¶17-21.)

60.     We respectfully submit that these awards are consistent with Congress's intent, as expressed in the PSLRA, of encouraging investors to take active roles in supervising securities actions. As set forth in its declaration (*id.*, ¶ 5), Lead Plaintiff has been committed to pursuing this Litigation and diligently and effectively fulfilled his obligation as representative plaintiff. Among other things, he performed the following tasks:

- Communicating with Lead Plaintiff's Counsel concerning the status, progress, and major strategy decisions regarding the Litigation;
- Reviewing major motions and pleadings to provide comments and direction as needed;
- Consulting with counsel concerning settlement negotiations.

61.     We respectfully submit that Lead Plaintiff's efforts and contributions were reasonable and warrant reimbursement.

* * *

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 21, 2025 in White Plains, New York.

*/s/ George N. Bauer*
George N. Bauer

16

DECL. OF GEORGE N. BAUER IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND LEAD PLAINTIFF'S COUNSEL'S MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARD                    Case No. 8:22-cv-01374-JWH-JDE

## **CERTIFICATION**

Pursuant to Civil Local Rule 5-4.3.4(a)(2), I hereby attest that concurrence in the filing of this document has been obtained from the signatory.

*/s/ Joseph A. Fonti*
Joseph A. Fonti

17